LEO C. COCKRELL AND CAROL P. COCKRELL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91167. Filed June 28, 1962.

*Ellsworth W. Ginsberg, Esq.*, for the petitioners.
*H. Tracy Huston, Esq.*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the years 1957 and 1958 in the amounts of $695.50 and $778.32, respectively.

The issue for decision is whether petitioners are required to include in their gross income amounts of per diem allowances to Leo C. Cockrell received during the years 1957 and 1958, and if so, are they entitled to a deduction for these amounts.

#### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioners Leo C. Cockrell (hereinafter referred to as petitioner) and Carol P. Cockrell, husband and wife, filed their joint Federal income tax returns for the years 1957 and 1958 with the district director of internal revenue at St. Louis, Missouri.

In July 1954 petitioner was employed by McDonnell Aircraft Corporation (hereinafter referred to as McDonnell) as a data engineer in its Engineering and Testing Division, and he has been so employed from that time until the present.

McDonnell is engaged in the research, development, and production of airplanes, missiles, and spacecraft. Over 99 percent of its business is from defense work under Government contracts.

McDonnell carries on its overall operations in an Engineering and Testing Division and in a Production Division. The Engineering and Testing Division designs, tests, and develops aircraft and missiles, while the Production Division manufactures these airborne weapons for the Government. McDonnell's Production Division carries on its manufacturing operations at McDonnell's only permanent plant in St. Louis, Missouri. The Engineering and Testing Division conducts its research and designs and produces prototype aircraft and missiles at McDonnell's only permanent plant in St. Louis, Missouri. The Engineering Division then tests these articles at facilities provided by the Air Force and Navy in accordance with their contracts with McDonnell. McDonnell has conducted testing projects at Holloman Air Force Base, New Mexico (hereinafter referred to as Holloman) ; Edwards Air Force Base, California; Eglin Field, Florida; Patuxent River, Maryland; and Cape Canaveral, Florida.

On September 8, 1955, McDonnell entered into a contract with the United States Air Force to carry out the research and development of a missile known as the GAM-72. This contract required that some of McDonnell's experimental testing of the missile be carried on at facilities furnished by the Air Force at Holloman. During the years 1957 through 1960, McDonnell scheduled and conducted two separate testing programs on the GAM-72 missile under this contract and supplements thereto.

In October 1956, McDonnell entered into a contract with the United States Air Force whereby it became one of the participants in the research and development of an airplane known as the F-101. The F-101 program required each contractor to carry out certain parts of the testing at Holloman. During the years 1956 through 1960 McDonnell scheduled and carried out 10 separate testing programs on the F-101 under this contract and supplements thereto.

Both the contract with respect to the F-101 and the GAM-72 provided for the Government to reimburse McDonnell for the cost of certain amounts it paid to employees for travel and per diem living expenses. The contract provisions relative to the payment of these costs read in part as follows:

General Provisions Clause 4:

(a) For the performance of this contract the Government shall pay to the contractor the costs thereof determined by the Contracting Officer to be allowable in accordance with Part II of Section XV of the Armed Forces Procurement Regulations as in effect on the date of this contract and the schedule (hereinafter referred to as "allowable costs") plus such fixed fee, if any, as may be provided for in the schedule.

\* \* \* \* \* \* \*

Part VI

Additional allowable costs

Within the meaning of Clause 4 of the General Provisions of this contract the following costs are deemed allowable in the performance of this contract.

\* \* \* \* \* \* \*

4. Costs for travel and per diem in accordance with the contractor's control procedures accepted by the Administrative Contracting Officer.

The schedule referred to in clause 4 of the General Provisions of the contract is a schedule of a specific job or item to be undertaken and sets forth the amounts to be paid therefor. The Armed Services Procurement Regulations in force at the time the contracts for the F–101 and GAM–72 were entered into between the Government and McDonnell provided a general basis for the determination of the allowable direct costs including material, labor, and other direct costs, and allowable indirect costs and contained examples of items of allowable and unallowable costs. Included in the items set out as examples of items of allowable cost was an item entitled "travel expenses."

McDonnell formulated control procedures on travel and relocation policy and on special field assignments which were submitted to the Air Force contracting officer for approval. In the event the contracting officer failed to approve a control procedure, McDonnell revised it to correct the matter to which the contracting officer objected.

McDonnell's control procedure 20.100 which provided for travel and relocation policy was issued on January 1, 1955. This control procedure, as revised from time to time, was in force at McDonnell from the date of its issuance through the year 1960 and was accepted by the Air Force contracting officer as controlling McDonnell's expenses for costs of travel and per diem in connection with the F–101 and GAM–72 contracts. Control procedure 20.100 as issued January 1, 1955, provided that authorizing personnel are responsible for the selection of the procedure under which an employee will be authorized to travel and that:

B. *REGULATIONS*

1. Authorizing personnel will manually approve travel or relocation prior to departure of employee in accordance with the following:

C.P. 20.101    TRAVEL—Domestic: Trips of a temporary nature from employee's home base within the continental limits of the United States.

C.P. 20.102    TRAVEL—Foreign Assignment: Any trip outside the continental limits of the United States.

C.P. 20.103    TRAVEL—Special Field Assignment: Temporary relocation for assignments of a special nature.
C.P. 20.104    TRAVEL—Relocation: Permanent relocation of present MAC employees within continental limits of the United States.
C.P. 20.105    TRAVEL AND RELOCATION—Field Service Representatives.
C.P. 20.106    TRAVEL—Local.

This provision remained unchanged in the various revisions of control procedure 20.100 throughout and including the revision of January 22, 1960.

McDonnell's control procedure 20.103 which is entitled, "Travel—Special Field Assignment," was issued on January 1, 1955. This control procedure with various revisions was in force at McDonnell from the date of its issuance until subsequent to June 1960 and was accepted by the Air Force contracting officer as controlling McDonnell's expenses for costs of travel and per diem in connection with the F–101 and GAM–72 contracts. McDonnell's policy and regulations with respect to the payment of per diem as set forth in control procedure 20.103, revised January 21, 1957, provided in part:

A. *POLICY*

1. Individual employees or groups of employees assigned to a single location for any period of 30 days to 9 months, will be subject to the regulations and provisions of this procedure, except when circumstances require special regulations, provisions or exceptions to this policy. * * *

\*       \*       \*       \*       \*       \*       \*

C. *REGULATIONS*

1. No employee may be "assigned" to a single location for any period in excess of 9 months.

a. Extension of "assignment" beyond 9 months will require review and additional approval of Vice President, Personnel or his designee.

(1) No per diem is authorized in excess of 9 months without such approval.

2. No employee may be "assigned" more than once for the duration of a single project.

3. Employee "assigned" for 60 days or more may take dependents to point of assignment subject to the following:

a. Only one round trip for each dependent will be allowed during "assignment."

4. Vacations occuring during assignment * * *

\*       \*       \*       \*       \*       \*       \*

c. No per diem will be paid during vacations, regardless of where vacation is spent.

\*       \*       \*       \*       \*       \*       \*

E. *ALLOWABLE EXPENSES*

\*       \*       \*       \*       \*       \*       \*

4. LIVING ALLOWANCES:

a. EMPLOYEE: $10 per day throughout assignment, except during vacations, beginning with day of departure from home, from which lodging must be provided.

These provisions of control procedure 20.103 remained unchanged from January 21, 1957, throughout the various revisions through the revi-

sion of June 12, 1960. Control procedure 20.103 as revised May 7, 1956, contained the provisions as above quoted except that paragraph C3a thereof provided:

a. If he elects to leave dependents at home, he will be authorized transportation expense at the end of every 5th week to and from home for a weekend visit with departure normally to be scheduled at the close of work on Friday, and in no event earlier than Friday noon.

(1) Per diem will continue as authorized for the assignment and no additional per diem will be authorized during visit.

(2) If before the end of the 5th week the employee decides that he would like to have his dependents with him, he may request authority for dependents' travel.

(a) Such authorization will require preparation and approval of a new TRAVEL AND RELOCATION AUTHORITY identical with and cross-referenced to the original TRAVEL AND RELOCATION AUTHORITY, and bearing number of dependents authorized and any travel advance required.

Beginning in May 1956 and throughout the years here involved a large number of employees from McDonnell's plant in St. Louis worked at Holloman on the F–101 and GAM–72 projects. At one time over 300 such employees were working there. Substantially all of these employees were initially assigned for a period of 9 months. All employees who were assigned from St. Louis to work on the F–101 and GAM–72 projects at Holloman received a $10 per diem living allowance while they were at Holloman. The Air Force reimbursed McDonnell for these per diem living allowance payments in accordance with the provisions in the F–101 and GAM–72 contracts.

By means of Travel and Relocation Authority issued on May 25, 1956, McDonnell assigned petitioner to duty at its testing facilities at Holloman. This Travel and Relocation Authority contained above the printed material on the form "From date" the date May 31, 1956, and above the printed material "To date" the date March 1, 1957. Under the printed statement "Purpose of trip" it contained the statement "Project Delta Flight Testing."

By Memorandum No. 1137 dated January 22, 1957, McDonnell extended the assignment of 13 employees assigned to Holloman including petitioner. Petitioner's assignment was extended for a period of 9 months from March 1, 1957. By a similar memorandum dated December 17, 1957, petitioner's assignment was extended for a period of 9 months from December 1, 1957. By similar memoranda, petitioner's assignment at Holloman was extended prior to the expiration of a 9-month period for an additional 9-month period, the final such period expiring on November 28, 1960. Petitioner worked continuously at Holloman from May 31, 1956, through November 28, 1960, with the exception of a short period in December 1957 when he returned to St. Louis to work for 3 days and thereafter took a week's vacation, not returning to Holloman until January 3 or 4, 1958, 1 week

in May 1960 which he spent at Eglin Air Force Base, and 1 week in September 1960 which he spent at McDonnell's plant in St. Louis.

Petitioner, as did the other McDonnell employees assigned from St. Louis to Holloman to work on the F–101 and GAM–72 projects, received a $10 per diem living allowance while he was at Holloman. In each of the years 1957 and 1958 petitioner received $3,470 from McDonnell in the form of per diem living expenses. No restriction was placed by McDonnell on petitioner's use of the amounts of these payments.

During the year 1957 and until early in 1958 McDonnell's employees at Holloman who were entitled to the per diem living allowance signed a travel expense report each week. This report had printed thereon the days of the week running from Sunday through Saturday and a column marked "Totals," with a notation "insert date" and underneath the space for the various dates a list of items, the first of which was "per diem living allowance." During each week that petitioner was at Holloman, he inserted the sum of $10 opposite that column for each day he was there and the sum of these daily amounts, which for a full week was $70, under "totals" and signed the travel expense report. Petitioner was required to sign this form in order to receive the per diem allowance.

Sometime early in 1958 McDonnell discontinued the use of the travel expense reports and instead each week prepared a list which contained the names of all employees at Holloman during the particular week and the amount of per diem due to each. In order to receive his per diem living allowance petitioner was required to sign this list opposite his name.

In the performance of his duties for McDonnell, petitioner has ordinarily been assigned to a testing project and has been in charge of the coordination and reduction of the data to formulate reports required by the tests conducted in connection with such project and the transmission of such reports to the personnel engaged in design and project work. Sometime in April 1956 petitioner was assigned at St. Louis as a data engineer on the Delta F–101B test project which was part of the tests being conducted under the F–101 contract. The Delta project was concerned with armament testing, and after some preliminary testing in St. Louis, the test project was moved to Holloman, where the program was carried out at facilities provided by the Air Force. Petitioner was assigned to Holloman as data engineer on the Delta F–101B test project and commenced his duties at Holloman in such capacity.

When petitioner was assigned to Holloman, he elected to take his wife and child with him and they accompanied him in his automobile to Holloman where they lived for approximately 2 months in and

around Alamogordo, New Mexico, a town of approximately 15,000 near Holloman, in motels until they were able to rent a house. McDonnell made a special allowance to petitioner for the 2 months in 1956 during which he and his family lived in motels. Alamogordo was a growing city and housing facilities were scarce. After 2 months petitioner rented a two-bedroom house in Alamogordo on a month-to-month basis where he and his family lived until July 1959. In 1958 a second child was born to petitioner and his wife, and in July 1959 petitioner and his family rented and moved into a different house in Alamogordo which he also rented on a monthly basis. Petitioner and his family lived in this house through November 1960. At the time of his assignment to Holloman in May 1956, petitioner was renting an apartment in St. Louis in which he lived with his wife and child. Upon his assignment to Holloman petitioner ceased to rent the apartment.

Petitioner worked on the Delta F–101B project until July 1, 1957, when he was assigned to work on the GAM–72 testing project which was beginning at Holloman at that time. The Delta F–101B test project had not been completed until July 1, 1957, when petitioner was assigned on the GAM–72 project. Petitioner remained with the GAM–72 test project until it was near completion. The amount of $10 per day was not greater than 125 percent of the per diem allowed by the Federal Government to its employees in the locality of Holloman during the years 1957 and 1958.

Petitioners on their 1957 income tax return included in their income under the designation "Out-of-town Travel Expenses" the amount of $3,470 and deducted this same amount as "Travel, reimbursed expenses, etc." with an attached explanation stating that "This amount was expended for transportation, meals, and lodging while traveling away from home in connection with my employer's business for the period 1–5–57 to 11–2–57." On their 1958 income tax return petitioners did not include the $3,470 received from McDonnell as per diem allowance but in answer to the question, "Did you receive an expense allowance or reimbursement, or charge expenses to your employer?", checked the box opposite "Yes."

Respondent in his notice of deficiency increased petitioners' income in each of the years 1957 and 1958 by the amount of $3,470 entitled, "Additional compensation" and in each of these years gave the following explanation:

(a) It is determined that the amount of $3,470.00 is additional compensation includible in your gross income under section 61(a) of the Internal Revenue Code of 1954; that this amount is not deductible as expenses of travel while away from home under section 62(2)(B) of the Code; and that the expenditure of such amounts represents nondeductible personal living expenses.

OPINION.

Petitioner's first contention is that the amounts received by him as per diem allowances are not includible in his gross income. This contention is based upon two arguments. Petitioner first argues that the $10 per diem allowances were by Act of Congress made travel expense deductions for income tax purposes. Petitioner points out that under provisions of the Armed Services Procurement Regulations, traveling expenses constituted a cost for which a contractor could be reimbursed and that McDonnell's contracts with the Government in connection with the F–101 and GAM–72 projects specifically provided that it be reimbursed for the traveling expenses incurred in connection with assignments under its control procedure 20.103 governing "Travel—Special Field Assignment." From these two facts petitioner concludes that the $10 per diem paid to employees assigned to Holloman, including petitioner, has been designated by legislative Act or regulation as travel expenses and such designation is conclusive for income tax purposes.

While petitioner refers both to the statute and the regulations, the only citation given by petitioner to support this contention is a citation to the Armed Services Procurement Regulations, a portion of which was a stipulated exhibit in the evidence in this case. However, even if we were to assume that this regulation has the force and effect of a congressional enactment, we do not agree with petitioner's contention. All that this regulation provides is that between the Government and the contractor, amounts paid by the contractor as per diem allowances under a procedure approved by an appropriate officer of the Government will be considered for the purpose of the contractor's being reimbursed by the Government for all the costs incurred under the contract, properly allocable to the contract. We need not pass upon whether such a regulation would be controlling as to the propriety of the deduction of such amounts for income tax purposes by the contractor since this is not here involved. The regulation in no way governs the character of the amount in the hands of the employee who receives it. The fact that this regulation permitted McDonnell to be reimbursed for the cost of the per diem payments merely shows that the Government agreed to include such amounts in McDonnell's allowable costs under the contracts.

Petitioner's second argument in connection with his contention that the $3,470 received by him in each year from McDonnell and denominated "per diem allowance" is not properly includible in his gross income is that under Rev. Rul. 58–453, 1958–2 C.B. 67, this amount was a per diem allowance in lieu of subsistence paid by an employer to his employee while in travel status which was not in excess of 125 percent of the maximum per diem rate authorized to be

paid by the Federal Government in the locality in which the travel was performed, and, therefore, should be considered as amounts for which the employee would be deemed to have been required to account to his employer for the purposes of section 1.162–17(b), Income Tax Regs.[1] Section 1.162–17(b) of respondent's Income Tax Regulations provides that the "employee need not report on his return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer." This regulation is issued by the Commissioner under section 162 of the Internal Revenue Code of 1954 [2] which provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business including traveling expenses while away from home in the pursuit of a trade or business. Petitioner's argument with respect to Rev. Rul. 58–453, 1958–2 C.B. 67, shows a misconstruction of the basic issue here involved since this revenue ruling, as well as the regulation to which reference is made therein, deals with travel expenses which constitute deductions under section 162(a)(2), and in no way determines what are travel expenses under this provision of the Internal Revenue Code. The amounts received by petitioner from McDonnell denominated "per diem allowance" totaling $3,470 in each of the years here involved are includible in petitioner's gross income under section 61. *Darrell Spear Courtney*, 32 T.C. 334 (1959).

---

[1] Sec. 1.162–17(b), Income Tax Regs:

(b) Expenses for which the employee is required to account to his employer—

(1) Reimbursements equal to expenses. The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer and which are charged directly or indirectly to the employer (for example, through credit cards) or for which the employee is paid through advances, reimbursements, or otherwise, provided the total amount of such advances, reimbursements, and charges is equal to such expenses. In such a case the taxpayer need only state in his return that the total of amounts charged directly or indirectly to his employer through credit cards or otherwise and received from the employer as advances or reimbursements did not exceed the ordinary and necessary business expenses paid or incurred by the employee.

(2) Reimbursements in excess of expenses. In case the total of amounts charged directly or indirectly to the employer and received from the employer as advances, reimbursements, or otherwise, exceeds the ordinary and necessary business expenses paid or incurred by the employee and the employee is required to and does account to his employer for such expenses, the taxpayer must include such excess in income and state on his return that he has done so.

[2] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

SEC. 162(a). IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \* \*

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and

The question remains whether petitioners are entitled to deduct any part or all of the per diem allowances from their gross income under section 62(2)(B) which provides that a taxpayer is entitled to the deductions allowed by section 162(a)(2) for expenses of travel while away from home which such taxpayer incurred in connection with the performance of his duties as an employee. The Supreme Court in *Commissioner* v. *Flowers*, 326 U.S. 465 (1946), set forth three conditions which must be satisfied before a travel expense deduction is allowable. These conditions are that the expense must be a reasonable and necessary traveling expense, it must be incurred by a taxpayer while away from home, and the expense must be incurred in pursuit of business.

Respondent in the instant case contends that petitioner is not entitled to any deduction for travel expenses since he has not satisfied the second condition set forth in *Commissioner* v. *Flowers, supra,* in that he has failed to show that any amount of the expenses incurred by him in 1957 and 1958 in connection with his assignment during those years at Holloman was incurred "while away from home." Respondent contends that the word "home" as used with respect to the deductibility of travel expenses means the taxpayer's principal place of business, with which contention we agree. *Robert A. Coerver*, 36 T.C. 252 (1960), affirmed per curiam 297 F. 2d 837 (C.A. 3, 1962).

This brings us to the question whether petitioner's principal place of employment during the years 1957 and 1958 was Holloman Air Force Base. This Court and other courts have allowed a deduction for expenditures for travel including meals and lodging when a taxpayer's employment at the place where such expenditures are made is temporary as contrasted with indefinite or indeterminate. *Peurifoy* v. *Commissioner*, 358 U.S. 59, 61 (1958), and cases there cited. What constitutes "temporary" as distinguished from "indefinite" is a question of fact. In resolving this factual question, consideration has been given to whether the type of employment is such that its termination within a short time could be foreseen, *Beatrice H. Albert*, 13 T.C. 129 (1949), as well as to the actual duration of such employment. *Floyd Garlock*, 34 T.C. 611 (1960).

In the instant case it is clear that although the control procedure adopted by McDonnell with the approval of the contracting officer of the Government provided for an initial assignment for a 9-month period, it also provided for reassignments for additional 9-month periods without limitation as to the number of such reassignments. From this as well as McDonnell's practice in making reassignments of personnel to Holloman, we conclude that the 9-month assignment period had no relationship to the length of time that the individual

so assigned might be stationed at Holloman. There is some indication in the testimony that for an employee assigned to a particular testing project, the length of time that the particular series of tests consumed might govern the time of such employee's assignment to Holloman, but that the time which would be consumed by such tests was uncertain. This testimony is too inconclusive upon which to base findings. Even if the evidence in this respect were more definite, it would only show that the length of such an employee's assignment to Holloman was uncertain.

Petitioner testified that at the time of his original assignment to Holloman he did not know that it could extend past the 9-month period. Little weight can be given to this testimony in view of the familiarity petitioner expressed with control procedure 20.103 in effect at the time of his assignment, which control procedure specifically provided for extensions of such assignment for additional 9-month periods. In any event, petitioner testified that prior to January 22, 1957, he was aware that the 9-month period was merely a time within which the assignment would be reviewed by the proper personnel of McDonnell and that the number of additional assignments for 9-month periods that he might be given were unlimited. The purpose of petitioner's trip to Holloman was stated to be "Project Delta Flight Testing" and there is nothing in the evidence to indicate that the time required for this project was definite but rather the indications are that it was of uncertain and indefinite duration. However, the evidence shows that prior to the completion of this project, petitioner was assigned to the GAM-72 project at Holloman.

Petitioner relies primarily upon the case of *Harvey* v. *Commissioner*, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959). The facts in the instant case are distinguishable from those in *Harvey* v. *Commissioner*, *supra*. In the *Harvey* case when the taxpayer there involved was transferred to Edwards Air Force Base in December 1952, he did not move his family but in October 1953, in accordance with a plan looking towards his retirement, and also because of the long separation from his family, did move his family to the area of Edwards Air Force Base. The taxpayer's assignments were for 90-day periods. The time of the tests to which the taxpayer there involved was assigned ranged from a period of 2 months to as long as 1 year or 2 years, and the taxpayer there involved was actually at Edwards Air Force Base only a little over 1 year. These facts distinguish the instant case from the *Harvey* case under the criteria suggested by the circuit court in that case that "An employee might be said to change his tax home if there is a reasonable probability

*known to him* that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case."

Respondent contends that the test set forth by the circuit court in *Harvey* v. *Commissioner, supra,* conflicts with decisions of this Court and with *Peurifoy* v. *Commissioner, supra.* Whether this test conflicts with the "temporary" as distinguished from "indefinite" test which has been used by this Court, *James R. Whitaker,* 24 T.C. 750 (1955), need not be decided herein. The facts here show both that petitioner's assignment to Holloman was indefinite and that there was a reasonable probability, *known to him* at least by early 1957, that he might be employed at Holloman for a long period of time. He was there 4½ years.

Since petitioner has failed to establish that during his assignment to Holloman Air Force Base in 1957 and 1958, he was "away from home" within the meaning of section 162(a)(2), we need not pass upon respondent's further contention that petitioner has failed to establish the amount of his expenditures for food and lodging at Holloman.

*Decision will be entered for the respondent.*