Jack L. Luckett and Maxine B. Luckett v. Commissioner.
Luckett v. Commissioner
Docket No. 1603-62.
United States Tax Court
T.C. Memo 1964-106; 1964 Tax Ct. Memo LEXIS 228; 23 T.C.M. (CCH) 622; T.C.M. (RIA) 64106; April 23, 1964
*228 1. Held, that the $10 per diem living allowance which was paid to petitioner Jack L. Luckett by McDonnell Aircraft Corporation of St. Louis, Missouri, while petitioner, an employee of the corporation, was assigned by the corporation by different assignments which totaled a period of almost three years to perform duties at Holloman Air Force Base located near Alamogordo, New Mexico, is includable in petitioners' gross income for the taxable years; held, further, that no part thereof is deductible under section 162(a)(2), I.R.C. 1954, as traveling expenses while away from home in the pursuit of a trade or business. 2. Held, on the facts which have been stipulated, that the respondent is granted the small increased deficiencies asked for in his amended answer for the years 1957 and 1958. Jack L. Luckett, pro se, 2209a Sidney St., St. Louis, Mo. Gerald S. Walsh, for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioners' income tax as follows: Year
Deficiency
1957
$355.78
1958
758.84
1959
823.59
1960
329.54
The deficiency for 1957 is due to one adjustment, "(a) Travel, reimbursed expenses disallowed $1,663.00" made by the Commissioner to the income reported by petitioners on their joint return filed for that year and is explained in the deficiency notice as follows: (a) On your return for 1957, you included $1,948.00 in gross income which was received from your employer. It is determined that this amount consisted of a moving expense allowance of $285.00 and a per diem allowance of $1,663.00. It is held that you are entitled to a deduction of $285.00 from gross income for moving expenses incurred in moving your family, household goods and personal effects to Alamogordo, New Mexico It is further held that the per diem allowance *230 of $1,663.00 is includible in your gross income, and that you are not entitled to any offsetting deductions for travel, meals or lodging expenses because you have not established the amounts expended for such purposes, or that you were "away from home" in the pursuit of a trade or business. Accordingly, your taxable income is increased in the amount of $1,663.00. The deficiencies for 1958, 1959, and 1960 are due to similar adjustments made to the income reported on the joint returns filed by petitioners for those years. The additions to petitioners' income for 1958, 1959, and 1960 are $3,650, $3,640, and $1,538, respectively. Petitioners, by appropriate assignments of error, contest these adjustments made by the Commissioner. Findings of Fact A stipulation of facts and supplemental stipulation of facts with exhibits attached were filed at the hearing and are incorporated herein by this reference. There was also some oral testimony and certain exhibits were introduced in evidence. Petitioners Jack L. and Maxine B. Luckett are husband and wife, residing in St. Louis, Missouri. They filed their joint Federal income tax returns for the taxable years 1957, 1958, and 1959 with *231 the district director of internal revenue at Albuquerque, New Mexico, and filed their 1960 joint Federal income tax return with the district director of internal revenue at St. Louis, Missouri. Jack L. Luckett, hereinafter sometimes referred to as petitioner, was employed by the McDonnell Aircraft Corporation, sometimes hereinafter called McDonnell, in October 1954. He remained in the employ of McDonnell until on or about May 20, 1960, at which time his employment was terminated. McDonnell manufactures aircraft, missiles, and electronic and automatic computer equipment, and produces, under contracts with the Government, aircraft and space equipment for various departments, including the United States Air Force and the United States Navy. In order to carry out these functions, McDonnell operates through an Engineering and a Production Division. The Engineering Division designs, tests, and develops airborne weapons, while the Production Division produces the weapons ordered. McDonnell's manufacturing operations are carried on in St. Louis, Missouri, while aircraft and missile testing are conducted by it at Holloman Air Force Base, Edwards Air Force Base, Patuxent River Naval Base, *232 and Cape Canaveral, now Cape Kennedy. McDonnell derives over 99 percent of its business from Government contracts. For testing purposes at Holloman Air Force Base, hereinafter sometimes referred to as Holloman, which is located near Alamogordo, New Mexico, McDonnell, during the years 1956 through 1960, used facilities furnished by the Government. Other aircraft manufacturing companies also used facilities furnished by the Government at Holloman. The time required for each stage of the work performed by McDonnell at Holloman was estimated, but it was not always possible to adhere to such estimates. In October 1956, McDonnell contracted with the United States Air Force to carry out research and development of an airplane known as the F-101. This contract provided that McDonnell perform experimental testing of the craft at Holloman. On September 8, 1955, McDonnell contracted with the United States Air Force to conduct research and development projects on a missile known as the GAM-72. The contract required that McDonnell conduct experimental testing of the missile at facilities furnished by the Air Force at Holloman. Testing of the weapons systems of the F-101 and in-flight launchings *233 of the GAM-72 required adequate and spacious range facilities which were not available in the St. Louis area. Such facilities were available at Holloman and it was selected as the site for such testing. Under the two aforesaid contracts, or supplements thereto, McDonnell scheduled and carried out at Holloman, during the years 1956 through 1960, 12 separate development and testing projects. Petitioner was assigned to Holloman in connection with the development and testing of GAM-72. Each of the above-mentioned contracts contained the following provisions relative to the Government's payment to McDonnell of travel and per diem costs: General Provisions Clause 4: (a) For the performance of this contract the Government shall pay to the contractor the costs thereof determined by the Contracting Officer to be allowable in accordance with Part II of section XV of the Air Force Procurement Regulations as in effect on the date of this contract and the schedule (hereinafter referred to as "allowable costs") plus fixed fee, if any, as may be provided for in the schedule. * * *
Part vi Additional allowable costs Within the meaning of Clause 4 of the General Provisions of this *234 contract the following costs are deemed allowable in the performance of this contract. * * *
4. Costs for travel and per diem in accordance with the contractor's control procedures accepted by the administrative Contracting Officer. The schedule referred to in Clause 4 of the General Provisions is a schedule of the specific job or item to be undertaken and sets forth the amount to be paid therefor. Under the aforesaid contracts, McDonnell formulated and submitted Control Procedures on travel and relocation policy and on special filed assignments to an Air Force Contracting Officer for approval. McDonnell's Control Procedure 20.100, entitled "Travel and Relocation - Policy" approved by an Air Force Contracting Officer and issued on January 1, 1955, was in force at McDonnell during the years at issue herein. Control Procedure 20.100 was revised on May 14, 1957, June 13, 1958, September 17, 1959, and January 22, 1960. McDonnell's Control Procedure 20.103, entitled "Travel - Special Field Assignment" approved by the Air Force Contracting Officer and issued on January 1, 1955, was in force during the years at issue herein. Control Procedure 20.103 was revised January 21, 1957, August 13, 1957, November 1, 1958, March 2, 1959, May 18, 1959, September 1, 1959, and *235 October 21, 1959. Insofar as material herein, the following represents McDonnell's policy established under the aforesaid Control Procedure: A. POLICY 1. Individual employees or groups of employees assigned to a single location for any period of 30 days to 9 months, will be subject to the regulations and provisions of this procedure, except when circumstances require special regulations, provisions or exceptions to this policy. * * *
C. REGULATIONS 1. No employee may be "assigned" to a single location for any period in excess of 9 months. a. Extension of "assignment" beyond 9 months will require review and additional approval of Vice President, Personnel or his designee. (1) No per diem is authorized in excess of 9 months without such approval. 2. No employee may be "assigned" more than once for the duration of a single project. 3. Employee "assigned" for 60 days or more may take dependents to point of assignment subject to the following: a. Only one round trip for each dependent will be allowed during "assignment." 4. * * * * * *
c. No per diem will be paid during vacations, regardless of where vacation is spent. * * * E. ALLOWABLE EXPENSES
*236 * * * 4. LIVING ALLOWANCES: a. EMPLOYEE: $10.00 per day throughout assignment, except during vacations, beginning with day of departure from home, from which lodging must be provided. Under the aforesaid contracts and Control Procedures, the United States Air Force and McDonnell agreed that the latter's employees assigned for duty at testing facilities located away from the St. Louis plant would be initially assigned for a period not to exceed 9 months, but that subsequent extensions of this period could be made. Under these contracts and the aforementioned Control Procedures, McDonnell was reimbursed by the Government for the $10 per diem living allowance paid each employee assigned to Holloman. Beginning in May 1956 through the time of petitioner's reassignment in May 1960, McDonnell assigned a large number of its employees at St. Louis to Holloman to work on the F-101 and the GAM-72. The initial assignment of these employees would be for a period not to exceed 9 months, and such assignment could be extended if the employee's services at Holloman were still required at the end of the initial period. McDonnell also employed some people at Holloman who were hired locally *237 and worked in such capacities as toolkeepers, expediters, secretaries, and janitors. Because they were hired locally, these workers were not paid the per diem living allowance. Moreover, they were not assigned to any particular project, but did general work as the various McDonnell projects required. McDonnell assigned petitioner to its facilities at Holloman in June 1957 under Control Procedure 20.103. Petitioner departed St. Louis for Holloman on June 26, 1957. While at Holloman, petitioner was employed by McDonnell as a lead man on the GAM-72 project. Petitioner was originally assigned at Holloman for a period of 9 months. Such assignment was extended periodically until May 1960. Petitioner received the following amounts of salary, per diem living allowances, and mileage allowance from McDonnell during the taxable years involved: Per Diem Living
Per Diem Living
Allowance for
Allowance for
Petitioner's
Mileage Al-
Year
Salary
Petitioner
Dependents
lowance
1957
$7,278.42
$1,860.00
$88.00
$113.20
1958
8,195.88
3,500.00
0
158.48
1959
9,309.47
3,640.00
0
115.92
1960
3,599.90
1,450.00
88.00
124.52
The amounts of *238 per diem allowance for petitioner's dependents were paid pursuant to paragraph E4b of Control Procedure 20.103 for the periods during which such dependents were traveling to Alamogordo, New Mexico, in 1957, and returning to St. Louis, Missouri, in 1960. The amounts of mileage allowance which petitioner received in the taxable years 1957 and 1960 are, pursuant to paragraph E1c and d of Control Procedure 20.103, for petitioner's personal travel via automobile to and from Alamogordo, New Mexico. The amount of mileage allowance which petitioner received in the taxable year 1958 was for his travel while on vacation during that year, which was conditioned upon his traveling to St. Louis during said vacation and reporting in at McDonnell's plant in St. Louis to establish that such travel had been performed. For the period April 10, 1959, to April 17, 1959, petitioner was assigned to duty at Tinker Air Force Base at Oklahoma City, Oklahoma. The mileage allowance paid to petitioner during the taxable year 1959 was for his travel from Alamogordo to Oklahoma City and return. Petitioner also received the amount of $52.53 during the taxable year 1959 as reimbursed lodging expense for the period *239 during which he was at Tinker Air Force Base. McDonnell required petitioner and all other employees entitled to the per diem living allowance to sign a weekly list which contained the names of all employees at Holloman during the particular week and the amount of per diem living allowance due each. In order to receive his per diem living allowance petitioner signed such lists opposite his name. Prior to June 26, 1957, petitioner Maxine B. Luckett was employed in St. Louis by the MissouriPacific Railroad Company and the amount of income from such source reported by petitioners on their return for the year 1957 was earned by her. As a result of petitioner's assignment by McDonnell to Holloman in June 1957, Maxine requested a 2-year leave of absence from her employer, the Missouri Pacific. The Missouri Pacific refused to grant Maxine a 2-year leave of absence from her employment and as a result she requested a 90-day leave of absence which was granted. In August 1957 Maxine, while residing at Alamogordo, submitted by mail a formal resignation to her employer, the Missouri Pacific, terminating her employment. This resignation was submitted prior to the expiration of the 90-day leave *240 of absence previously granted to Maxine. After petitioner and his family returned to St. Louis in May 1960, Maxine was again employed by the Missouri Pacific and the amount of income from such source reported by petitioners on their return for the year 1960 was earned by her. When petitioner and his family arrived in Alamogordo they rented living quarters and petitioner signed a lease for the period July 1, 1957, to June 30, 1958. On December 9, 1957, petitioner entered into an agreement to purchase a 3-bedroom house in Alamogordo. At the time of such agreement construction of the house had not been completed but was completed thereafter and petitioner and his family moved into the house on January 19, 1958. Prior to leaving for Holloman in June 1957, petitioners informed the principal of the Mullanphy Public School in St. Louis that their daughter, Sharon Lee Luckett, would attend school in Alamogordo in September 1957. On or about the aforesaid date petitioners requested that their daughter's records be forwarded to Alamogordo. Petitioners' daughter attended school in Alamogordo. The following excerpt from a form letter printed on McDonnell stationery, referring to the petitioner *241 and addressed "TO WHOM IT MAY CONCERN," reads: 1. The referenced employee has been temporarily assigned to the flight test program being conducted for the U.S. Air Force by McDonnell Aircraft Corporation at Holloman Air Force Base. This program is of a classified nature and is dependent on skills and capabilities of specialists who are furnished on an "as required" basis by McDonnell Aircraft Corporation, St. Louis, Missouri. 2. The period of assignment for any individual is dependent on the test program requirements and may vary from days to months according to the problem areas encountered. Personnel selected for this duty are subject to recall at any time, depending on overall McDonnell requirements. There is no guaranteed minimum or maximum period of assignment to any individual by McDonnell Aircraft Corporation, although corporate policies prohibit assignment beyond a nine month period. In the event that the work assignment extends beyond this time limit, extension of the period may be made by a director of the Company if program progress would be impeded or loss of efficiency resulting in increased cost to the government would be incurred. Opinion BLACK, Judge: A brief *242 summary of the facts as they affect the principal issue in this case may be made as follows: In June 1957, petitioner was assigned by his employer, McDonnell, from St. Louis, Missouri, to work as a lead man which required him to supervise a crew of men to work on aircraft, to Holloman Air Force Base near Alamogordo, New Mexico, for a period of time of testing and development projects of the GAM-72 missile program for the United States Air Force. Petitioner's family moved with him to Alamogordo where they made their home until his eventual return to St. Louis, approximately three years later. While in Alamogordo, petitioner bought a house that was not fully constructed at the time he signed the contract to purchase it. While employed at Holloman, petitioner received a per diem allowance which respondent has included in gross income. Petitioners contend that if said amounts constitute gross income, they are entitled to deductions as travel expenses, including the cost of meals and lodging equal to the amount of per diem allowance. McDonnell was under contract to perform extensive development and testing projects at Holloman. Petitioner worked on the developing and testing of the GAM-72 *243 missile during his entire stay at Holloman. McDonnell's policy was to assign its employees to Holloman for a 9-month period but McDonnell was free to extend this initial period as it saw fit. Petitioner's stay there was actually extended from time to time until 1960, when he returned to St. Louis. Based on the facts which we have included in our Findings of Fact, respondent maintains that petitioner's employment was not temporary but was indefinite and indeterminate from its inception because its termination within a reasonably short period of time was not foreseeable, hence, petitioner's tax home during the taxable years was at Alamogordo and not at St. Louis as he contends. Petitioner, on the other hand, contends that his assignment to Holloman was only temporary and that notwithstanding he was there for more than 3 years his tax home was St. Louis during all those years. Petitioner contends that $10the per diem which was paid to him while he was at Holloman was reimbursed traveling expenses while he was away from home on business. Petitioner has cited section 162(a), 1954 Code, the pertinent parts of which read as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. *244 - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * The same question as to the $10 per diem allowance paid by McDonnell to one of its employees who was assigned by it to Holloman was before us in Leo C. Cockrell, 38 T.C. 470 (1962) and was decided in favor of the Commissioner. That case was affirmed, 321 F. 2d 504 (C.A. 8, 1963). The Eighth Circuit also affirmed Kalist v. Commissioner, 321 F. 2d 508, and Filler v. Commissioner, 321 F. 2d 900, both Memorandum Opinions of the Tax Court. The court in affirming us in Cockrell v. Commissioner, supra, said in the last paragraph of its opinion: There is no warrant in the Code for allowing a deduction for "Living Allowance" made to an employee when he is "relocated" at a place where the needs of his employer's business compel him to go in the prosecution of his job or occupation and he takes his family with *245 him and abides with them at his relocated post for an "indefinite" - long period of time, as here. Reimbursement for increased cost of living under such circumstances is not a deductible item under Section 162(a)(2), supra. Cf. Courtney v. Commissioner, 32 T.C. 334. The petitioner here recognizes the distinction between "indefinite" and "temporary" employment as considered by the Supreme Court in Peurifoy v. Commissioner, supra. His contention that his "indeterminate" relocation at Holloman was temporary in relation to McDonnell's overall business operations is not within such concept. In his reply brief petitioner says: "The cases referred to by the respondent are not identical to my case and therefore cannot be used in determining the just and right decision in this case." It may well be that the facts in this case, as petitioner contends, are not identical with those of the taxpayers in the Cockrell case and other similar cases. However, we can see nothing in the instant case which would justify us in making a distinction between it and the cases to which we have just referred. We sustain the Commissioner in his determination on this, the main issue in the case. *246 On their 1957 income tax return, petitioners showed a total per diem allowance of $1,948. In his notice of deficiency, respondent allowed a deduction of $285 of this amount from gross income for moving expenses to Alamogordo, and disallowed the balance of $1,663. It was stipulated that the petitioners had received $113.20 mileage allowance in 1957 for driving to Alamogordo from St. Louis, in addition to the $1,948 reported. By amended answer respondent requested that an additional deficiency be determined for the taxable year 1957 based on the fact that the $113.20 is includable in gross income. On their 1958 income tax return, petitioners did not report the receipt of any per diem allowance or mileage allowance. It was determined in the notice of deficiency that petitioners received a per diem allowance of $3,650. It was later stipulated that petitioners received a per diem allowance of $3,500 and a mileage allowance of $158.48. By amended answer respondent requested that petitioners' 1958 deficiency be increased due to the inclusion in gross income of $3,658.48, rather than the initially determined amount of $3,650. Of course, no discussion is needed to establish that the burden *247 of proof rests on the Commissioner to establish his right for an increased deficiency. However, the facts stipulated by the parties seem to establish that there will be a small increased deficiency for the year 1957 and a still smaller increased deficiency for the year 1958. We, therefore, sustain respondent's request in his amended answer for increased deficiencies in 1957 and 1958. Respondent concedes that the mileage allowance in the amount of $124.52 and the per diem living allowance for petitioner's dependents in the amount of $88 which petitioner received in the taxable year 1960 represent allowable deductions for moving expenses and that the net adjustment for additional taxable income for the taxable year 1960 does not exceed $1,450. Effect will be given to this concession of respondent in a computation under Rule 50. Decision will be entered under Rule 50.