John H. Painter and Zoe M. Painter v. Commissioner.
Painter v. Commissioner
Docket No. 2634-65.
United States Tax Court
T.C. Memo 1966-157; 1966 Tax Ct. Memo LEXIS 126; 25 T.C.M. (CCH) 832; T.C.M. (RIA) 66157; June 30, 1966
John H. Painter, pro se, 12 St. Anthony Ct., St. Charles, Mo. Charles B. Tetrick, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1960 and 1961 in the amounts of $435.71 and $601.02, respectively. The issue for decision is whether petitioner John H. Painter is entitled to deduct all or any portion of amounts received by him from his employer, McDonnell Aircraft Corporation, as per diem living allowances while he was working at Eglin Air Force Base. Findings of Fact Most of the facts were stipulated and are found accordingly. Petitioners, husband *127 and wife, filed their joint Federal income tax returns for the calendar years 1960 and 1961 with the district director of internal revenue at St. Louis, Missouri. On the return for the calendar year 1960 in the space provided for home address, petitioners gave the address of 732 No. Kingshighway, St. Charles, Missouri and above the space so provided wrote, "temporary address - 128 Judith Dr., Valparaiso, Florida." On their return for the calendar year 1961 petitioners, in the space provided for home address, gave an address of 262 Magnolia Avenue, Valparaiso, Florida. John H. Painter (hereinafter referred to as petitioner) was employed in May of 1957 as an assistant field service representative by McDonnell Aircraft Corporation (hereinafter referred to as McDonnell). Petitioner has remained an employee of McDonnell from the date of his first employment until the present time. During the years 1960 and 1961, petitioner was an assistant field service representative with McDonnell stationed at Eglin Air Force Base (hereinafter referred to as Eglin), Florida. McDonnell is engaged primarily in the research, development, and production of airplanes, missiles, and space craft. Over 99 *128 percent of McDonnell's business is derived from Government contracts. McDonnell's operations are conducted through divisions including Engineering, Production, Purchasing and Procurement, Fiscal, and Personnel. The Engineering Division designs, tests, and develops airborne weapons; the Production Division produces the weapons ordered; the Purchasing and Procurement Division acquires materials required by the Production Division; the Fiscal and Personnel Divisions are engaged in record keeping and employment activities. The Production Division carries on its manufacturing operations in St. Louis, Missouri. The Engineering Division conducts its research and designs and produces prototype of craft and missiles in St. Louis, Missouri. In the performance of Government contracts McDonnell has personnel stationed away from St. Louis in other cities, in foreign countries, at subcontractors' plants, and at Government installations for a variety of purposes such as material procurement, quality control, testing and instruction. During the years here involved McDonnell engaged in testing and servicing (rendering technical assistance and advice) activities at locations such as Eglin Air Force *129 Base, Florida; Holloman Air Force Base, New Mexico; Edwards Air Force Base, California; Patuxent River Naval Base, Maryland; Cape Kennedy, Florida; and approximately 30 other operational locations throughout the United States and foreign countries. McDonnell has entered into several contracts with the United States Air Force to conduct research and development projects on a missile known as the GAM-72. The performance of these contracts required certain experimental testing and servicing of the GAM-72 at facilities furnished by the United States Air Force. McDonnell has conducted such programs at some 17 United States Air Force bases including Holloman Air Force Base, New Mexico; Edwards Air Force Base, California; and Eglin. All of the United States Air Force contracts contained standard provisions relative to reimbursement of allowable costs including costs for travel and per diem. Since over 99 percent of McDonnell's business is derived from Government contracts, virtually all costs incurred by McDonnell are charged to Government contracts in one form or another. When a McDonnell employee is working directly on a particular contract, McDonnell accounts for such costs as a *130 direct charge to the contract. When a McDonnell employee is working on various contracts or the costs incurred are not an allowable direct charge to the contract, then McDonnell records such costs on its books as overhead expense. These overhead accounts are allocated to all Government contracts. McDonnell formulated and submitted Control Procedures on travel and relocation policy and on special field assignments to United States Air Force contracting officers for approval. In the event a contracting officer failed to approve a Control Procedure, McDonnell revised and corrected the objectionable matter. McDonnell's Control Procedure 20.100 entitled, "Travel and Relocation - Policy" and Control Procedure 20.105 entitled, "Travel and Relocation - Field Service Representatives" were in force during the years here involved and were approved by the appropriate contracting officers. Minor revisions were made to these procedures subsequent to the original issuance on January 1, 1955. Control Procedure 20.105 applied specifically to those employees classified as field service representatives and this control procedure covered both domestic and foreign relocation. The minimum or maximum *131 period of assignment was not stated in the control procedure but extensions of the original period could be made. For allowable contract costs under Control Procedure 20.105 McDonnell was reimbursed by the Government for employee domestic per diem living allowances at a rate of $8. McDonnell was also reimbursed for moving costs including transportation of the employee and his family and the cost of moving household goods and personal effects. McDonnell's travel authorizations and extensions thereof are primarily for administrative conveniences and are not binding on division managers as to the length of assignments of their personnel. During the years here involved McDonnell had a large number of employees stationed at Eglin and was engaged in extensive testing of the GAM-72 missile. A filed service representative for McDonnell works at an out-of-town location at a customer field installation. The nature of the work is such that the representative may be stationed at the customer's site for a few days or several years. It is a standard practice at McDonnell to inform field service representatives at the time of an assignment to a customer's location that the length of the assignment *132 cannot be predicted with any certainty. In February 1960, McDonnell assigned petitioner to Eglin to aid and assist in servicing the GAM-72 missile. At the time of this assignment petitioner was informed, in accordance with McDonnell's standard practice, that the length of his assignment to Eglin could not be predicted with any certainty. Petitioner's particular work was to instruct Air Force personnel in the use of the GAM-72 missile and render technical advice and analyze problems encountered with the missile. During the period involved herein, McDonnell had approximately 4 field service representatives stationed at Eglin. McDonnell is currently engaged in the performance of the GAM-72 contracts at Eglin and at the time of the trial of this case had 13 field representatives there. When petitioner was originally assigned to Eglin, he was asked to go as soon as possible to replace an employee of McDonnell working at Eglin who had resigned his position. At this time he was told that it might be possible that as new bases were activated he would be moved to those bases as an instructor on the GAM-72 missile. Petitioner's original orders entitled, "Travel and Relocation Authority" *133 were for the period February 11, 1960, to August 11, 1960; on August 23, 1960, the period was extended from August 12, 1960, through February 12, 1961; on February 15, 1961, the period was extended from February 13, 1961, through August 13, 1961; on August 17, 1961, the period was extended from August 14, 1961, to February 13, 1962; and on February 26, 1962, the period was extended from February 14, 1962, to August 13, 1962. Although petitioner did not know how long he would remain at Eglin or when he might be reassigned to another base, as of November 14, 1961, he believed, on the basis of past experience, that he would be stationed at Eglin for at least another year. When petitioner left St. Louis in February 1960 to go to Eglin, he was accompanied by his wife and he had some household goods and personal effects shipped to Eglin. Petitioner was reimbursed by McDonnell for these traveling expenses and the cost of moving his household goods and personal effects. Upon arrival in Florida petitioners rented an unfurnished apartment on Judith Drive in Valparaiso and later moved to another unfurnished apartment on Magnolia Avenue in Valparaiso. Petitioners used the furniture that had *134 been moved for them from St. Louis, Missouri in these apartments. On February 29, 1960, petitioner was put on special orders with the United States Air Force and for the remainder of his employment at Eglin, he worked under the direction of the United States Air Force in connection with three different Air Force contracts with McDonnell. The majority of his time at Eglin was spent in instructing Air Force personnel in the use of the missile. However, he also rendered technical advice to the Air Force and analyzed problems encountered with missiles. Petitioner expected to remain at Eglin as long as his services were needed by the Air Force there. In order to receive payment of the $8 per diem living allowance, petitioner submitted weekly travel expense reports to McDonnell and was paid on the basis of these reports. Prior to moving to Florida, petitioners and petitioner's mother had resided in a house at 732 North Kingshighway, St. Charles, Missouri, which property was jointly owned by petitioner and his mother. Petitioner's mother has lived continuously at the Kingshighway address from 1948 to the present time. Petitioner received a one-half interest in the property when his *135 father died in December 1958. The upstairs of the residence has since 1948 been rented to tenants. Petitioner has paid certain of the expenses, including taxes, on the property at 732 North Kingshighway, St. Charles, Missouri, from the time he received a one-half interest in the property to the present time. He continued to make similar payments during the time he was living in Florida. Upon returning to St. Louis in March 1962, petitioners resided at 732 North Kingshighway, St. Charles, Missouri, and continued to reside there until January 1964 when they purchased and moved into a home at St. Anthony's Court in St. Charles, Missouri. On their Federal income tax returns for the calendar years 1960 and 1961 petitioners included in their gross income per diem living allowances received while at Eglin in the amount of $2,152 and $2,952, respectively. They deducted these exact amounts from gross income with the explanation in the year 1960, "Less Per Diem - see attached form" and the explanation in the year 1961, "Deduction from gross-per diem." Respondent in his notice of deficiency increased petitioners' taxable income by the amounts deducted by petitioner in each of the years here *136 involved as per diem allowances with the explanation that petitioners were not entitled to any deductions for travel, meals, or lodging expenses because they had not established the amount expended for such purposes or that they were away from home in the pursuit of a trade or business. Opinion Petitioners in the instant case did not exclude the amounts of per diem from their gross income and apparently do not now contend that the amounts are not gross income. They claimed a deduction for the amounts. While petitioner, neither in his petition nor in his oral argument at the trial, stated under what provision of the Internal Revenue Code he considered the "per diem" payment to be deductible from gross income, it is apparent that if the deduction is allowable it must be by the provisions of section 162(a)(2) of the Internal Revenue Code of 1954. That section provides for the deduction of travel expenses while away from home in the pursuit of a trade or business. Therefore, this case, as many similar cases, involves the question of whether, for tax purposes, petitioner was away from home. The Supreme Court, in Commissioner v. Flowers, 326 U.S. 465 (1946), *137 set forth three criteria for deduction of traveling expenses, one of which was that the expenses be incurred while away from home. Since that time many cases have dealt with the proposition of whether a particular taxpayer claiming a deduction for traveling expenses was "away from home" within the meaning of the statute. In Peurifoy v. Commissioner, 358 U.S. 59, 61 (1958), the Court considered the question of whether the employment of the taxpayer there involved at the place at which he made expenditures for meals and lodging which he sought to deduct was "temporary" or was "indefinite." The Court concluded that the evidence supported a finding that the employment was "indefinite" as distinguished from "temporary" and therefore affirmed the holding disallowing the claimed deduction to the taxpayer. A number of cases have dealt specifically with employees of McDonnell and employees of other aircraft manufacturing companies whose employees are stationed throughout the country at various Air Force bases working in connection with their employers' contracts with the Government. The cases of Leo C. Cockrell, 38 T.C. 470 (1962), affd. 321 F. 2d 504 *138 (C.A. 8, 1963); Kalist v. Commissioner, 321 F. 2d 508 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court; and Filler v. Commissioner, 321 F. 2d 900 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court, all dealt with employees of McDonnell who were stationed at Holloman Air Force Base, New Mexico. In each of those cases, the Court held that per diem allowances paid by McDonnell to the taxpayer involved were not deductible by such taxpayer since they were living allowances paid when the taxpayer was relocated and not traveling expenses away from home. In reaching this conclusion in each instance, the Court concluded that the taxpayer's employment at Holloman Air Force Base was "indefinite" and not "temporary." There are some factual differences in the instant case and the above-cited cases involving employees of McDonnell. These differences are not substantive. Petitioner was at Eglin Air Force Base not Holloman. He was performing work as a field service representative and not in testing work. His "per diem" was provided for under a different paragraph of McDonnell's Control Procedures on Travel and Relocation from the one applicable to *139 the taxpayers involved in the three cases heretofore cited. There is no substantive difference in the provisions of the paragraph of McDonnell's control procedures under which "per diem" was paid to petitioner and the paragraph of the control procedure under which the taxpayers involved in the cases heretofore cited received their payments. Petitioner knew he would stay at Eglin as long as his services were needed by the Air Force on the GAM-72 missile just as the employees involved in the other cases knew they would stay at the place to which they were assigned for the period during which their services at such places were needed by McDonnell. The fact that petitioner was told or thought that some possibility existed that he might be reassigned to another base on short notice is of no weight in reaching a decision in this case since the evidence does not show that there existed any reasonably definite plan or time for such a transfer. Cf. Beatrice H. Albert, 13 T.C. 129, 131 (1949). Petitioner moved his wife (he had no children) and his household goods and personal effects to Eglin. This was true of the taxpayers involved in other cases involving employees of McDonnell. *140 Petitioner attempts to distinguish his situation from the decided cases by stating that he maintained a home for his mother in St. Charles, Missouri. He argues that since he had to "maintain two homes" he should be allowed the deduction of the "per diem" paid to him. The fact that petitioner expended some amounts in the maintenance of the property at 732 North Kingshighway, St. Charles, Missouri, where his mother lived, does not make this residence petitioner's tax home. Also, this was not only the home of petitioner's mother but partially rental property of which petitioner was a joint owner. Petitioner has not shown that any payments he made with respect to this property were for maintaining a home as distinguished from maintaining rental property. However, even if petitioner were maintaining a home for his mother, this fact would not cause that home to be petitioner's home for tax purposes. On the basis of Leo Cockrell, supra, and the other cases heretofore cited, we sustain respondent's disallowance of petitioners' claimed deduction for per diem living allowances in each of the years 1960 and 1961. Decision will be entered for respondent.