William R. and Mary A. Crawford v. Commissioner.
Crawford v. Commissioner
Docket No. 804-67.
United States Tax Court
T.C. Memo 1968-196; 1968 Tax Ct. Memo LEXIS 103; 27 T.C.M. (CCH) 957; T.C.M. (RIA) 68196; September 3, 1968. Filed William R. Crawford, pro se, 4 Kent Rd., Port Jefferson Station, Long Island, N. Y. Robert S. Gorin, and Agatha L. Vorsanger, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1964 in the amount of $990.91. After certain concessions by respondent, the single issue presented is whether the per diem allowances, in the total sum of $4,224, received by petitioner William R. Crawford from his employer in the year 1964, were deductible as necessary business expenses incurred in traveling away from home. Findings of Fact Some of the facts have been *104 stipulated and they are found accordingly. William R. Crawford, who will be referred to as petitioner, and Mary A. Crawford, his wife, lived in Port Jefferson Station, Long Island, New York, at the time of the filing of the petition in this case. They filed their joint income tax return for the year 1964 with the district director of internal revenue, St. Louis, Missouri. Prior to 1962 petitioner lived with his wife and two children in a house that he owned in North Highlands, California. In April 1962 petitioner was employed by Litton Systems, Inc., of Beverly Hills, Los Angeles County, California. Sometime within the next two months petitioner and his family moved from the house in North Highlands to a leased house in Palmdale, about 400 miles from North Highland. From April 1962 to November 1963 petitioner performed his duties as a field representative in Palmdale, Beverly Hills, and Woodland Hills, all located in Los Angeles County. On November 19, 1963, petitioner received written notice from his employer, Litton Systems, Inc., of his assignment as a field representative to McDonnell Aircraft Corporation in St. Louis, Missouri. The notice stated, in part: "Assignment: Indefinite: *105 Effective start of shift 27 Nov. 63." Under its rules, Litton Systems, Inc., defines an indefinite field support assignment as an assignment which is expected to last at least 60 days but which normally would not last more than 365 days. Petitioner's assignment at McDonnell Aircraft Corporation actually commenced on November 27, 1963, and actually terminated in January 1966, at which time he was transferred to Long Island. In November 1963 petitioners and their two children moved from Palmdale to St. Louis where they lived in a motel until the latter part of December 1963, when they moved into a house they purchased in Hazelwood, Missouri. The house was purchased during the time that they were residing in the motel. When they left Palmdale petitioners shipped all of their furniture and personal belongings to St. Louis where these items were held in storage until the petitioners purchased the house. Petitioner's assignment to McDonnell Aircraft Corporation was made to assist the latter corporation in the installation of inertial navigation systems on airplanes. These inertial navigation systems had been developed by Litton Systems, Inc., and were sold to McDonnell Aircraft Corporation. *106 Petitioner and the other employees of Litton Systems, Inc., assigned to McDonnell Aircraft Corporation, provided technical assistance in the installation and repairs of the inertial navigation systems in airplanes, which were then sold to the United States Air Force. During the taxable year 1964 petitioner received a $12 per diem allowance from his employer for a period of 352 days, or a total sum of $4,224. His employer withheld taxes for $3,384 of the foregoing sum, 958 representing $12 a day for a 282-day period, but did not withhold taxes on the balance, or $840, representing $12 a day for a 70-day period. In his income tax return for 1964 petitioner reported the $3,384 which had been included in the W-2 Form, and took deduction for the same amount as a business expense. The balance of the per diem payments in the total sum of $840 was not reported in the return. Respondent determined the total amount of the per diem payments in 1964 (now conceded to be $4,224) constituted income and that petitioner was not entitled to any business deduction. Opinion Petitioner contends the per diem payments are deductible as traveling expenses while "away from home in the pursuit of *107 a trade or business" under section 162(a)(2), I.R.C. 1954. The facts in this case parallel those in several other cases where the identical issue was involved and it was held the taxpayer was not "away from home" within the meaning of the statute, and the per diem allowances received were income and not deductible as traveling expenses. Leo C. Cockrell, 38 T.C. 470 (1962), affd. 321 F. 2d 504 (C.A. 8, 1963); Filler v. Commissioner, 321 F. 2d 900 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court; Kalist v. Commissioner, 321 F. 2d 508 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court. Petitioner argues that his home was in the State of California in 1964 and that he was sent to St. Louis to work on a temporary basis. He points to the evidence that shows he was assigned to St. Louis on what Litton termed an "indefinite" assignment, which Litton defines as an assignment which is expected to last 60 days but normally would not last more than 365 days. Petitioner testified he had lived in California prior to 1964 and be considered his home was in California in 1964 where he owned a house *108 on which he received a veteran's tax exemption in Sacramento County and where he voted in 1964, by absentee ballot, in Los Angeles County. This evidence tends to establish California was his legal residence and business home prior to his going to St. Louis in November 1963, in the sense that he actually dwelt in that State and it was the principal place of his employment and the place where he carried on his work. It may well be that California could continue to be his legal residence for a veteran's tax exemption or for voting purposes after he left that State in November 1963. But, as pointed out in the cited cases, California could not continue to be his "home" under section 162(a)(2) if his work assignment to a location in another state was for an indefinite or an indeterminate period of time. It is only when the work assignment to the new location is "temporary" as distinguished from "indefinite" that the employee will be considered "away from home" when in the new location. And, as we stated in Leo C. Cockrell, supra, "[what] constitutes 'temporary' as distinguished from 'indefinite' is a question of fact." Here, it is to be noted that the employer actually *109 classified the work assignment to St. Louis as "indefinite." Petitioner argues, however, that his employer's rules define an "indefinite" assignment as one that is expected to last from 60 to 365 days and the argument seems to be that this makes the St. Louis assignment "temporary." We do not think the evidence of the employer's rule is helpful to petitioner. Evidently there was no limitation, even under the employer's rules, on the duration of the assignment or the number of reassignments. Petitioner's assignment to St. Louis lasted for over two years - longer than his first assignment in California which was classified as "permanent." In short, the employer's rule defining an "indefinite" assignment to a certain location leaves the length of time the employee will be stationed at the new place "indefinite." It does not make the new location "temporary." It cannot be said that petitioner, working on location in St. Louis, was temporarily absent from his permanent place of employment in California. He testified when he went to St. Louis he expected he would be assigned elsewhere from St. Louis. He said he might be assigned any place, including back to California, but he actually asked *110 for a permanent assignment to New York and received it. It is rather clear that petitioner did not consider his assignment to St. Louis to be of short duration. He moved his family and all of his furniture to St. Louis. He bought a house in St. Louis. We can accept his testimony that he was practically forced to buy a house because rental houses were scarce. Whether he bought or leased a home would not be very important. The 959 important fact is that he established a home, an abode in St. Louis, where he lived and where he performed his duties for his employer for over two years. The facts show petitioner's assignment to St. Louis was "indefinite." We hold he was not "away from home" within section 162(a)(2), and the per diem allowances were income and not deductible as necessary traveling expenses. Decision will be entered under Rule 50.