EMERSON HOLTER and PEARL HOLTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holter v. Commissioner
Docket No. 9682-76.
United States Tax Court
T.C. Memo 1978-411; 1978 Tax Ct. Memo LEXIS 105; 37 T.C.M. (CCH) 1707; T.C.M. (RIA) 78411; October 12, 1978, Filed Gregory Tschider, for the petitioners. Gerald W. Leland, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code *106 [1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in the petitioners' Federal income tax for the year 1971 in the amount of $ 591.62 and for the year 1972 in the amount of $ 914.20. The only question for decision on the merits is whether the petitioners are entitled to a deduction, under section 162(a)(2), in the amount of $ 2,449.02 for the year 1971 and in the amount of $ 3,265 for the year 1972 for the cost of transportation, meals, and lodging while engaged in employment on a construction project during the years in question. The respondent has conceded that there has been proper substantiation of expenditures in these amounts under the *107 provisions of section 274. However, petitioners, by a motion to dismiss filed at the time of trial, have raised a jurisdictional question which must first be dealt with. THE MOTION TO DISMISS The motion to dismiss filed by counsel for petitioners seeks to have the Court "dismiss the above petition for lack of jurisdiction under United States Tax Court Rule 13 and enter a decision of no deficiency." We believe that the motion to dismiss is patently without foundation but that, nevertheless, decision should be for the petitioners on the merits. Therefore, it is felt that the motion can be dealt with in rather summary fashion. It is the petitioners' position that the statutory notice of deficiency, sent to them on July 23, 1976, was issued erroneously and was subsequently withdrawn.It is obvious from the context of the motion that, by stating that the statutory notice was "withdrawn", the petitioners mean that it was revoked or rescinded by the respondent or his delegate. It is apparently the petitioners' contention that there was, thus, no statutory notice outstanding against the petitioners upon which a petition could be based and, thus, no foundation for the Court's jurisdiction *108 in this case. Evidence with respect to the motion was introduced on behalf of both parties. The evidence shows that on June 1, 1976, the Internal Revenue Service sent a letter to the petitioners advising them of a proposed deficiency in their income tax for the years 1971 and 1972 and advising them of their rights of appeal (district conference and appellate conference). It also advised them that, if they had not been heard from in 30 days, a formal statutory notice of deficiency would be mailed to them. Petitioners, through their representative, a certified public accountant in Bismarck, North Dakota, did send two letters, one dated June 15th and one dated June 23, 1976, to the Internal Revenue Service; but both of these letters merely asked for information under the Freedom of Information Act and neither requested a district or an appellate conference. Accordingly, no district or appellate conference having been requested on behalf of petitioners, respondent, on July 23, 1976, issued a statutory notice of deficiency for the two years in question. There appears to be no question that this statutory notice of deficiency was a perfectly valid statutory notice when issued. *109 The petitioners' representative testified that, upon his receipt of a copy of this letter, on July 27, 1976, he called the district office of the Internal Revenue Service, apparently to request that a district conference be held, and that he was advised by the person with whom he spoke that the statutory notice had been erroneously issued and that "it would be withdrawn at the district conference." This witness also testified that he had not requested a confirmation in writing of the alleged erroneous issuance and proposed withdrawal of the statutory notice and that he, himself, had not written to the Internal Revenue Service to confirm his understanding that it would be withdrawn. He did state that he had prepared a memorandum of this telephone conference for his own files, but not even this memorandum was produced and offered in evidence. The Internal Revenue Service did grant the petitioners' request for a district conference and also for an appellate conference. As a result of granting the petitioners' requests for these conferences, the Internal Revenue Service, as a matter of internal housekeeping, wrote the following legend upon its retained copy of the statutory notice *110 (ninety-day letter), indicating that the file was being transferred from the "ninety-day-letter" file to the "district conference" file: Withdrawn from 90 day letter to District Conference July 27, 1976. Ignore this letter. Not to be defaulted. Case carded into Conference 8-2-76. s/ R. D. Roller Chief, Technical Branch On October 7th and again on October 15, 1976, letters were sent from the Internal Revenue Service to the petitioners which indicated quite clearly that the statutory notice previously issued was still considered to be in full force and effect and, also, advised them to file a petition prior to the expiration of the 90-day period, if they still desired to contest the deficiencies proposed. There was not one shred of evidence to show that the Internal Revenue Service had issued any notice whatsoever to the petitioners or their representatives that, in any way, indicated that the statutory notice had been withdrawn, revoked, rescinded, or, otherwise, rendered null and void. We find it so incredible as to be utterly beyond belief that a person in the position of petitioners' representative could think, let alone believe, that a document of the dignity of a *111 statutory notice of deficiency could be withdrawn or revoked in a two-minute telephone conversation, without some memorialization of the event in writing. We find as a fact that the statutory notice of deficiency, issued by respondent to petitioners on July 23, 1976, was never withdrawn, revoked, or rescinded. Having found as a fact that the statutory notice was not withdrawn or revoked, we need not decide the legal question raised by the parties as to whether or not the respondent can revoke a statutory notice once it is issued. FINDINGS OF FACT Petitioners filed timely joint Federal income tax returns for the taxable years 1971 and 1972. Their legal residence at the time the petition herein was filed was 1010 Sunset Drive, Mandan, North Dakota. Shortly after their marriage in 1953, the petitioners moved from Missoula, Montana to Mandan, North Dakota, where they have maintained a residence ever since. The petitioner Emerson Holter (hereinafter referred to as "petitioner") is a pipefitter by trade.Since 1953, he has been affiliated with the local union for pipefitters in Bismarck, North Dakota, a city adjacent to Mandan. A schedule of the petitioner's employment history, *112 introduced at the trial, shows that he was employed during most of the 25 years from 1953 through 1977 on construction projects, such as refineries, missile sites, power plants, and a civic center, in the Mandan-Bismarck area, or in localities close enough thereto for easy commuting. [3] Since 1960, the petitioner's wife has been employed in Bismarck by the North Dakota Teachers Retirement Fund. The petitioners purchased a home in Mandan, North Dakota in 1959, which they have continued to own and in which they have resided continuously up to the time of trial in this case. The petitioners have a daughter who was in high school in Mandan during the years here in question. They have a church affiliation there.They pay property taxes and other state and local taxes there and are part of the general community. Mandan has been their home before, during, and after the years here in question. *113 Since moving to Mandan in 1953, the petitioner has obtained employment through the local union in Bismarck, North Dakota. As indicated above, during most of the time before and after the years in question, the petitioner has been employed on construction projects in the Mandan-Bismarck area or in places within easy commuting distance, although, in order to remain continuously employed, it appears to have been necessary for him to work temporarily on projects in locations somewhat remote from that area. Being out of work in the early part of 1971, the petitioner was referred by his union to the Morrison-Knudsen Company, Inc. (hereinafter referred to as "the company") for employment on the construction of an antiballistic missile installation in Concrete, North Dakota. Petitioner was hired by the Company on March 22, 1971 as a pipefitter. Petitioner, along with approximately 43 other construction workers, was discharged by the Company on June 25, 1971, because of an "unauthorized coffee break." Upon being discharged by the Company from this project at Concrete, petitioner returned to his home in Mandan and was immediately referred to another job as a pipefitter in Casper, Woming. *114 However, before reporting for work at Casper, the petitioner, through the local union, learned that he could go back to work for the Company on the project at Concrete.It appears that the petitioner and all but three of the other workers who had been discharged were rehired by the Company on July 1, 1971. In his employment with the Company, the petitioner was paid on an hourly basis and had no employment contract or anything else to say how long he would be employed. He made no commitment to the project as to the length of his employment and was told nothing concerning the duration of the assignment. As to his experience with other similar projects, the longest time the petitioner had ever been employed on such a construction project was for a period of one year and that the average period of his employment on a single project was approximately six months. There was no evidence offered to show that anything about this particular project was brought to petitioner's attention that would have caused him, or any other normal person, to think that the length of employment there would be any different from that experienced by him on similar projects during the preceding 18 years. *115 Construction on this project was begun by the Company in April of 1970 and was substantially completed in August of 1973. According to the Company records, the total number of persons employed on the overall project (which apparently embraced several locations other than the one at Concrete, North Dakota) started at zero in April of 1970; rose fairly steadily to 2,000 in October of 1970; fell abruptly to 700 in January of 1971; rose to close to 2,200 in May and June of 1971; fell gradually to 1,500 in January of 1972; and, after rising to 2,000 in June of 1972, fell off sharply thereafter and declined steadily to zero in August of 1973. The number of craft personnel on the payroll varied approximately in these same proportions. Concrete, North Dakota is approximately 300 miles from Mandan. There was no housing available there. From aught that appears in the record, there was nothing at Concrete except the construction project on which the petitioner was working. In order to provide temporary housing for certain of its managerial personnel, the Company did set up a trailer park in which it rented trailers to them. But even this facility was apparently located 15 or 20 miles *116 from Concrete in the town of Langdon, North Dakota. There is no indication that any attempt was made by the Company to provide any form of housing for workmen such as the petitioner. While working for the Company on this project, petitioner lived in a rented room in Walhalla, North Dakota, which is approximately 300 miles from Mandan and 16 miles from Concrete. During this period, his wife and daughter remained at the family home in Mandan. It was the petitioner's usual practice to stay in Walhalla during the working days of the week and to return to his home in Mandan on the weekends. On their joint Federal income tax return for the year 1971, petitioners claimed employee business expense of $ 2,345.82 for room and board and $ 103.20 for transportation, or a total of $ 2,449.02. This amount, however, was reduced by the amount of $ 2,060 received by the petitioner from the Company as a per diem allowance. Thus, they claimed a net deduction of $ 389.02. Petitioners have substantiated expenditures claimed on their 1971 return. On their joint Federal income tax return for the year 1972, petitioners claimed employee business expense of $ 3,193 for room and board and $ 72 *117 for transportation, making a total of $ 3,265. This amount was reduced by the amount of $ 2,470 received by petitioner as per diem from the Company. Thus, the petitioners claimed a net deduction of $ 795. Petitioners have substantiated the expenditures claimed by them on their 1972 return. After having been rehired by the Company on July 1, 1971, petitioner continued to work on the project at Concrete, North Dakota until December 8, 1972, when his employment was terminated by the Company because of a reduction in its work force. The petitioner made every reasonable effort to obtain employment in the Mandan-Bismarck area while employed by the Company at Concrete. He had a strong desire to return to Mandan during this entire period. The chart of petitioner's employment history indicates that he was not able to obtain employment in the Mandan-Bismarck area immediately after leaving the project at Concrete. It does show, however, that, in five out of the six years since being employed there, he has been employed on projects in this area or within easy commuting distance of his home at Mandan. At the time of the trial, he was again employed by the Company, this time on a project *118 at Coal Creek, North Dakota, a place 30 miles north of Bismarck. ULTIMATE FINDINGS OF FACT 1. The petitioner's employment at Concrete, North Dakota was temporary in 1971 and 1972. 2. The petitioner's "home" for tax purposes during 1971 and 1972 was Mandan, North Dakota. OPINION Section 162(a)(2) permits a deduction for "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." Three conditions must be met to qualify for such a deduction. The expenses must have been ordinary and necessary, must have been incurred while away from home, and must have been incurred while in the pursit of a trade or business. Commissioner v. Flowers,326 U.S. 465 (1946). The narrow factual issue here is whether petitioner's expenses in Walhalla were incurred "while away from home." Petitioner claims that Mandan is his "home". Respondent argues that the petitioner was not away from home, when he incurred expenses while living in a rented room at Walhalla and working at Concrete, North Dakota. We agree with petitioner. Where a taxpayer maintains a personal residence at one location, but accepts *119 an employment assignment of short and reasonably definite duration elsewhere, he is permitted a deduction for business expenses incurred while away from home, Peurifoy v. Commissioner,358 U.S. 59 (1958), affg. 254 F.2d 483 (4th Cir. 1957), thereby avoiding the burden of duplicate living expenses while at a temporary job site. Tucker v. Commissioner,55 T.C. 783 (1971). The problem in such cases is to determine where to draw the line between a temporary work site and an assignment that is so indefinite as to justify a belief that it is permanent and to require that one transfer his home base to the site of his job. See Michaels v. Commissioner,53 T.C. 269 (1969), and cases cited therein.
An analysis of the cases reveals that "neither reconciliation nor deduction of a universally applicable rule is possible", Whitman v. United States,248 F.Supp. 845, 850 (W.D. La. 1965). Therefore, the Court must weigh the particular facts of each case to determine the side of the line on which it falls. The following rule for such a determination was stated in Tucker v. Commissioner,supra at 786: *120 * * * the deductibility of traveling expenses and duplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment. Relevant considerations include whether the taxpayer had a logical expectation that the employment would last for a short period, an assurance that the job itself would not extend beyond a reasonably brief duration, an inordinate duplication of living expenses, and enough financial, familial, and social bonds to choose prudently to remain at his original residence, rather than uproot his family from their accustomed home and relocate them at the site of his present work. In light of all the facts and circumstances present in this case, we find that the petitioner's employment assignment at Concrete was temporary and that his "tax home" in 1971 and 1972 was Mandan, North Dakota. We reach this conclusion by applying the criteria previously mentioned, the intentions and actions of the petitioner, and the contacts and interests he maintained with Mandan throughout the years in question. At all times, the petitioner intended *121 the work assignment at Concrete to be temporary. Recognizing his economic plight in being unemployed at the moment, he accepted employment as a pipefitter away from home, while continuing the attempt to obtain a similar job near his home and family. He made no commitment to the project as to the length of employment, and he learned, early in his employment with the Company, that one in his position could be laid off without notice at any time at the employer's discretion. In addition to this, he knew from past experience, over a number of years on similar projects, that his employment on such projects had been for an average period of only six months, and had never lasted for more than a year. Moreover, petitioner's contacts with Mandan were substantial. He resisted uprooting his family and home to move to a work site as unreliable and remote as Concrete. He and his wife had owned their home in Mandan for a number of years prior to his employment at Concrete. His wife had worked there, or rather nearby in Bismarck, with the North Dakota Teachers Retirement Fund for a number of years and continued to do so during the petitioner's temporary absence while working at Concrete. *122 Their daughter had attended school in Mandan, and was in high school there during the years in question. Virtually all of their familial, financial, and social bonds were there. The question posed in the Tucker case, supra, quoted above, as the test of deductibility of traveling and duplicate living expenses, must be answered in the negative in this case. That is to say, considering all the facts and circumstances, we find that the petitioner could not "reasonably have been expected to move his residence [from Mandan] to the vicinity of his employment" at Concrete. On similar facts, involving construction workers, this Court in recent cases has held the nature of the employment to be temporary. See Babeaux v. Commissioner,T.C. Memo. 1977-154, on appeal 4th Cir.; Patrick v. Commissioner,T.C. Memo. 1977-153, on appeal 4th Cir.; Waldrop v. Commissioner,T.C. Memo. 1977-190. Therefore, considering all of the evidence, we conclude that the petitioner's employment at Concrete, North Dakota by the Company in 1971 and 1972 was temporary in nature, that the petitioner's home was in Mandan, North Dakota, and that the expenses *123 of transportation and food and lodging were incurred while away from home in the pursuit of a trade or business and are deductible as claimed by the petitioners. * * *
In accordance with the foregoing, the motion to dismiss for lack of jurisdiction is denied, and Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioner testified specifically that several of these places were within the range of 30 or 40 miles from Mandan and that he lived at home and commuted to the site of the job. A glance at a standard map of North Dakota indicates that the other places fall within this general category.↩