Kenneth W. Gideon, Chief Counsel, I.R.S., Glenn L. Archer, Jr., Atty., Tax Div., U.S. Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Richard Farber, Douglas G. Coulter, Washington, D.C., for defendant-appellee.

**James D. GROOVER and Wanda M. Groover, Plaintiffs-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Defendant-Appellee.**

No. 82–8609
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Sept. 16, 1983.

Before GODBOLD, Chief Judge, FAY and CLARK, Circuit Judges.

PER CURIAM:

James and Wanda Groover appeal from a decision by the tax court denying deductions of Mr. Groover's expenses for certain meals, lodging and transportation. Mr. Groover incurred these expenses while he was employed at a TVA construction site 210 miles distant from his family's resi-

dence in Jonesboro, Georgia. Section 162(a) of the Internal Revenue Code allows deduction of traveling expenses incurred by the taxpayer while he is away from home in pursuit of a trade or business. However, a taxpayer may not deduct traveling expenses necessitated by his decision to maintain a residence distant from his employment unless that employment is temporary and not indefinite. *See Peurifoy v. Commissioner,* 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); *Claunch v. C.I.R.,* 264 F.2d 309 (5th Cir.1959); *Babeaux v. C.I.R.,* 601 F.2d 730 (4th Cir.1979). In the present case, the tax court determined that Mr. Groover's employment at Watts Bar was not temporary but instead indefinite. We affirm.

Mr. Groover, an electrician, could not find work near his family's well-established home in Jonesboro. Consequently, in 1975 he sought and found work at the construction site of the TVA's Watts Bar Nuclear Power Plant near Spring City, Tennessee. Mr. Groover worked at the Watts Bar site from 1975 to 1980. Over the course of time, he was promoted to electrician superintendent. His employment was for "specifically limited temporary" periods of 50 weeks. Petitioners' Exhibit 5. At the end of each such period, he was laid off for two weeks, during which he returned to Jonesboro, looked for work in that area, and received unemployment compensation. However, he always returned to Watts Bar, until April 1980 when he left voluntarily for a position in Macon, Georgia. TVA's arrangements for temporary workers allowed TVA to avoid conferring upon those workers the more expensive benefits of permanent employment.

A TVA personnel form submitted in evidence shows that Mr. Groover's supervisor found, "Mr. Groover takes great interest in his work and keeps the men well-informed on their job." A box on the form designated "Personnel Officer Remarks" shows the phrase, "Interested in reemployment."

In *Peurifoy v. Commissioner,* the Supreme Court specifically noted that the taxpayer had not challenged the validity of the

distinction engrafted by the tax court as to whether employment was temporary or indefinite. Thus, resolution of the case turned on the narrow question of fact as to whether the petitioners' employment was temporary or indefinite. 359 U.S. at 60, 79 S.Ct. at 105, 3 L.Ed.2d at 31. In applying the distinction, the tax court has come to use subjective criteria:

> Relevant considerations include whether the taxpayer had a logical expectation that the employment would last for a short period, an assurance that the job itself would not extend beyond a reasonably brief duration, an inordinate duplication of living expenses, and enough financial, familial and social bonds to choose prudently to remain at his original residence, rather than uproot his family from their accustomed home and relocate them at the site of his present work.

*Holter v. C.I.R.,* 37 T.C.M. 1707, 1711 (1978). In *Holter,* the tax court allowed deductions like those Mr. Groover seeks. Like Mr. Groover, Mr. Holter was a construction worker with a longtime family residence near which he had fruitlessly sought employment; his daughter attended the local high school; his wife worked; and he had a church affiliation. He ultimately sought and found employment on the construction of a remote missile installation. Mr. Holter was hired March 22, 1971, discharged June 25, 1971, rehired July 1, 1971, and finally terminated December 8, 1972.

Unlike Mr. Groover, Mr. Holter provided evidence that he had a logical expectation that the employment would last for a short period. Mr. Holter had no employment contract at all. On similar projects, he was employed an average of six months. There was no evidence showing why he or anyone else should think that this missile project would be different. Employment at the missile site started at zero in April 1970; rose steadily to 2,000 in October 1970; fell to 700 in January 1971; rose to about 2,200 in May and June 1971; fell gradually to 1,500 in January 1972; and, after rising to 2,000 in June 1972, fell steadily to zero in August 1973. The number of craft person-

nel at the site varied approximately in proportion with these fluctuations. Furthermore, there was evidence that the area around the missile site was quite inhospitable; there was nothing besides the construction itself.

In contrast, in the present case Mr. Groover failed to present sufficient evidence supporting the existence of his logical expectation that his employment was temporary. There was evidence that his term of employment was indefinite. When the court asked Mr. Groover, "How long did you expect that they would continue to need electricians like you on the job?" he responded, "Like I say, sir, provided the job continued, two or three years." Transcript at 13. His expectation was clear, although he did add, "But again, you never know with the Tennessee Valley being an arm of the government, it may shut down any moment. We knew that." Transcript at 13. The court noted that Mr. Groover considered himself a good employee and that he was promoted. Mr. Groover did have contracts with fifty-week terms. Mr. Groover may have wanted work in Jonesboro more than work at Watts Bar, but he did accept work at Watts Bar for about five years. The Watts Bar area, unable to absorb all the workers, may have offered accommodations less hospitable than Jonesboro; nonetheless, the tax court did not clearly err in finding that Mr. Groover could reasonably expect employment at the end of each fifty-week term.

Mr. Groover relies on *Frederick v. United States,* 457 F.Supp. 1274 (D.N.D.1978), aff'd, 603 F.2d 1292 (8th Cir.1979). However, the taxpayer in that case was more like Mr. Holton in *Holton v. C.I.R.* than Mr. Groover. The court found that the taxpayer in *Frederick,* a carpenter, "expected to be laid off when winter came." 603 F.2d at 1296. "The workers knew that employment at the project was seasonal and that all but a few of the carpenters would be laid off during the winter." 603 F.2d at 1296. The same circumstances did not exist in the present case.

While sympathy exists for Mr. Groover's position, it has not prevailed. *Peurifoy v. C.I.R.,* 358 U.S. 59, 61–63, 79 S.Ct. 104, 106–07, 3 L.Ed.2d 30, 32–33 (1958) (Justice Douglas, joined by Justices Black and Whittaker, dissenting); *Babeaux v. C.I.R.,* 601 F.2d 730, 732 (4th Cir.1978) (Judge Dumbauld specially concurring).

AFFIRMED.