DONALD G. JONES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 4201-82.
United States Tax Court
T.C. Memo 1983-722; 1983 Tax Ct. Memo LEXIS 64; 47 T.C.M. (CCH) 506; T.C.M. (RIA) 83722; December 5, 1983. Larry Rothman, for the petitioner. Patrick McGovern, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, *65 Judge: Respondent determined a deficiency in petitioner's income tax for the calendar years 1978 and 1979, in the respective amounts of $1,443.80 and $2,608. After concessions, the primary issue for our decision is whether petitioner's employment at the San Onofre Nuclear Generating Station (hereinafter "SONGS") was temporary or of indefinite duration. If we find that petitioner's employment was temporary, he may deduct the claimed cost of daily transportation in 1979 between his home and the SONGS job site [1] under section 162. [2] In such case, however, we must decide a second issue: whether petitioner was living "away from home" in connection with his employment in the years in question, so as to entitle him to deduct claimed expenses for meals and lodging in 1978 and 1979 under section 162. *66 FINDINGS OF FACT Some of the facts have been stipulated, and such facts, together with attached exhibits, are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioner was a resident of 417 Monterey Lane, San Clemente, California. This residence was an apartment which petitioner rented. He resided therein from September 1976 until December 1981. Petitioner is and has been a pipewelder (also known as pipefitter) since at least 1976. He is a member of Plumbers and Steamfitters Local Union No. 403, located in San Luis Obispo, California. In August 1976, as the result of a reduction in force, petitioner was laid off from his job at the Diablo Canyon Power Station near San Luis Obispo. Petitioner heard of work available at the San Onofre Nuclear Generating Station (SONGS), some 271 miles south of San Luis Obispo and 65 miles north of San Diego. Because petitioner had the necessary union certifications, he became a "guest" of Local Union No. 230, within whose jurisdiction the SONGS job lay. Petitioner was hired by the Bechtel Corporation (hereinafter "Bechtel") and began working as a pipewelder at SONGS in September 1976. This *67 was the same month in which he rented and moved into his apartment in San Clemente, located about five miles from the SONGS job site. The hiring practices of Bechtel on the SONGS construction job, with respect to craftsmen such as petitioner, were as follows: When Bechtel needed pipefitters for SONGS, the labor relations representative for Bechtel would call the Union Hall (through which petitioner was hired) and request a specific number of such craftsmen. No indication was given to the union how long a job would last, and no such representations were made to petitioner. The various construction projects at SONGS had time schedules, which included a projected starting date and completion date but, in practice, such dates were uncertain, with some projects finishing early, and some projects finishing late. Bechtel projected that its need for pipefitters at SONGS would increase continuously from the beginning of the project (late 1974) until late 1979. Thereafter, it was projected that the need for pipefitters would begin to decline, but that some pipefitters would continue to be needed until late 1982 or early 1983. As specific projects were completed, pipefitters would be moved *68 from one project to another, as needed. Pipefitters found to be in excess supply at that time would be laid off. The selection of those who would be laid off was made by Bechtel, and was based upon job performance. The least skilled employees were laid off first, and the best employees were retained until the end of the construction project at SONGS. Neither union seniority nor local union affiliation was a factor in determining those workers who would be laid off. During his time at SONGS, petitioner worked on 19 different construction projects, each one lasting from one month to ten months. He was employed continuously from September 1976 until December 1981, with two breaks: (a) he was laid off from November 1976 to February 1977, and (b) he was laid off for a few weeks in May 1977. Throughout this period, petitioner resided in his San Clemente apartment during the week, but went home on weekends to be with his parents in Ontario, California. While there, he occupied a bedroom in his parents' house, which was furnished to him without charge. Following the termination of his employment at SONGS in December 1981, petitioner worked in Los Angeles, California, but continued *69 to maintain his San Clemente apartment at least until the petition in the instant case was filed in February 1982. Under a union agreement with Bechtel, petitioner was paid a subsistence allowance of $3,664 in 1978 and $3,904 in 1979, which amounts were included on petitioner's Forms W-2 for said years. The subsistence paid to petitioner was at the rate of $16 per day. Petitioner claimed such subsistence allowances as employee business expenses in his 1978 and 1979 returns, and also claimed a further amount of $1,270 in 1979 for automobile expense, computed on the basis of 6,864 miles traveled at $ .185 per mile. In his statutory notice of deficiency herein, respondent disallowed the claimed expenses on the grounds that petitioner's employment at SONGS was indefinite, as opposed to temporary, and on the further ground that petitioner had failed to substantiate the amounts claimed. [3]
During the years 1978 and 1979, petitioner's employment at SONGS was indefinite and not temporary. OPINION Although we have held that automobile expenses in commuting between the *70 taxpayer's residence and even a temporary job site outside a taxpayer's normal area of employment are not deductible, see Turner v. Commissioner,56 T.C. 27 (1971), vacated and remanded on respondent's motion by unpublished order (2d Cir. March 21, 1972); McCallister v. Commissioner,70 T.C. 505 (1978), that issue has not been presented to us in this case. Instead, respondent takes the position that if petitioner's employment is temporary his transportation expense between his home and his job site is deductible.[4] We therefore limit our consideration to the "temporary" versus "indefinite" issue. Since we agree with the respondent that petitioner's employment at SONGS was not temporary and therefore his transportation expenses are not deductible, any conflict with Turner v. Commissioner,supra is mooted. McCallister v. Commissioner,supra.
*71 Section 162(a)(2) allows a deduction for traveling expenses, including meals and lodging, if incurred by the taxpayer in connection with a trade or business and while "away from home." A taxpayer's "home" for purposes of section 162(a) is the vicinity of his principal place of employment. Commissioner v. Stidger,386 U.S. 287 (1967). However, respondent has recognized, and this and other courts have applied the rule, that where a taxpayer who has a principal place of employment goes elsewhere to work on a "temporary" basis, his home for purposes of section 162(a) remains in the vicinity of his prior place of employment. McCallister v. Commissioner,supra.Temporary employment for purposes of applying this rule has been defined as the kind of employment that can be expected to last for only a short period of time. Norwood v. Commissioner,66 T.C. 467, 469 (1976); Albert v. Commissioner13 T.C. 129, 131 (1949); McCallister v. Commissioner,supra.On the other hand, employment is indefinite if its termination within a "fixed or reasonably short period of time" cannot be foreseen. Stricker v. Commissioner,54 T.C. 355, 361 (1970), *72 affd. 438 F.2d 1216 (6th Cir. 1971). The present case is appealable to the Ninth Circuit, and that Court has expressed a slightly different view as to the meaning of indefinite employment. The Ninth Circuit's view, as expressed in Harvey v. Commissioner,283 F.2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), is that employment is indefinite "if there is a reasonable probability known to him [the taxpayer] that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies with circumstances surrounding each case." Subsequent opinions by the Ninth Circuit reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. See Coombs v. Commissioner,608 F.2d 1269, 1274-1276 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976); Wills v. Commissioner,411 F.2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967); Wright v. Hartsell,305 F.2d 221, 224 (9th Cir. 1962). However, on this record it is unnecessary to decide what differences, *73 if any, exist between the two approaches because we conclude that under either the test as applied by this Court or that applied by the Court of Appeals for the Ninth Circuit, petitioner's employment at SONGS does not qualify as temporary. Even if it is known that the employment will terminate at some future date, the employment is not temporary if it is expected to last for a substantial or indefinite period of time. Jones v. Commissioner,54 T.C. 734 (1970), affd. 444 F.2d 508 (5th Cir. 1971); Cockrell v. Commissioner,38 T.C. 470, 479 (1962), affd. 321 F.2d 504 (8th Cir. 1963). Employment which originally is tempoary may subsequently become indefinite because of changed circumstances or the passage of time. Norwood v. Commissioner,supra;Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). In the instant case, no representations were made to petitioner with regard to the length of his employment. It is clear in this record, however, that the SONGS construction job was a major piece of work, and Bechtel, the prime contractor, made forecasts of its needs for pipefitter manpower *74 for a period beginning at the end of 1974 and continuing into 1983. Under Bechtel's hiring practices, as we have found them, petitioner could reasonably expect to remain employed as a pipefitter on the SONGS job as long as there was need for his services and as long as his job performance was satisfactory. As it turned out, petitioner worked continuously at SONGS (with two minor breaks) from September 1976 until December 1981, a period of over five years, which demonstrates both the need of Bechtel for pipefitters as well as the quality of petitioner's work. Even though petitioner may have had no assurance of how long his job would last when he signed on at SONGS, that fact is not determinative of whether his employment was temporary. McCallister v. Commissioner,supra.The absence of permanence does not require a finding that petitioner's job was temporary. Garlock v. Commissioner,34 T.C. 611, 616 (1960). With minor differences in detail, we find this case to be factually indistinguishable from that of the taxpayer in Portillo v. Commissioner,T.C. Memo. 1982-518, [5] and we think the same result is dictated. We accordingly *75 hold that petitioner is not entitled to deduct either his automobile transporation expenses in 1979, nor his subsistence expenses for 1978 and 1979. [6]
Decision will be entered for the respondent.
Footnotes
1. On brief, respondent has stated that the only issue for decision is whether petitioner's employment was temporary or indefinite. Respondent's counsel has specifically conceded that if the Court finds that the employment of petitioner was temporary, then petitioner should be entitled to the deductions he claimed for transportation expenses under sec. 162(a). ↩
2. All statutory references herein are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Rules of Practice and Procedure of the Tax Court, unless otherwise stated.↩
3. On brief, respondent has conceded that the amounts claimed represented petitioner's actual expenditures.↩
4. In making this concession, respondent is apparently attempting to put himself in compliance with section 2 of Pub. L. 95-427, 92 Stat. 996, as amended by Pub. L. 96-167, section 2, 93 Stat. 1275 (effective October 7, 1978), which provides as follows: Section 2. Commuting Expenses With respect to transportation costs paid or incurred after December 31, 1976 and on or before May 31, 1981, the application of sections 62, 162, and 262 and of Chapters 21, 23, and 24 of the Internal Revenue Code of 1954 to transportation expenses in traveling between a taxpayer's residence and place of work shall be determined - (1) without regard to Revenue Ruling 76-453 (and without regard to any other regulation, ruling, or decision reaching the same result as, or a result similar to, the result set forth in such revenue ruling); and (2) with full regard to the rules in effect before Revenue Ruling 76-453. See also Rev. Rul. 190, 1953-2 C.B. 303↩.
5. See also Cushman v. Commissioner,T.C. Memo. 1982-519; Morgan v. Commissioner,T.C. Memo. 1982-520; Alvarez v. Commissioner,T.C. Memo. 1982-521; Cristobal v. Commissioner,T.C. Memo. 1982-522. See further Groover v. Commissioner,714 F.2d 1103↩ (11th Cir. 1983), affirming a Memorandum Opinion of this Court. 6. Since we have found that petitioner's employment was indefinite rather than temporary, we need not concern ourselves as to whether petitioner's legal "home" was in San Clemente, as respondent claims, or in Ontario, as petitioner claims. Wherever it was, his "home" for purposes of sec. 162(a) was in the vicinity of his principal place of employment, which was SONGS, and not where his personal residence was situated. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Kroll v. Commissioner,49 T.C. 557, 561-562↩ (1968).