[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12653
Non-Argument Calendar

_____

Agency No. 021096-15


MICHAEL E. BROWN,
MIRIAM MERCADO-BROWN,

Petitioners - Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court

_____

(March 30, 2020)

Before WILSON, ANDERSON and MARCUS, Circuit Judges.

PER CURIAM:

Petitioners-Appellants Michael E. Brown and Miriam Mercado-Brown

(together, the "Browns") appeal from the decision of the United States Tax Court,

which held that taxpayer Brown's travel expenses in 2012 and 2013 were not deductible under the Internal Revenue Code ("IRC"), leading to deficiencies in the Browns' federal income tax for those years of $3,669 and $17,905, respectively, and that they were liable for negligence penalties for those years of $734 and $3,581, respectively.  On appeal, the petitioners argue that the Tax Court erred in declining to consider uncontroverted factual evidence presented at trial, which established that Brown's travel expenses were deductible because his "tax home" was Atlanta, Georgia, rather than Pennsauken, New Jersey.  After thorough review, we affirm.

This case turns on Brown's work with American Furniture Rental, Inc. ("AFR"), which is based in Pennsauken, and whether, while he was working for AFR, Brown's "tax home" was Pennsauken or Atlanta.  Brown, who has been a certified public accountant for about 30 years, operates what he characterizes as a "concierge CFO" business called "Project Next," in which he contracts with companies to manage their finances and to lead and mentor their finance personnel. In September 2012, Brown signed a consulting agreement with AFR, agreeing to provide services beginning in October 2012 for a term of three years, which could be extended.  AFR agreed to pay Brown $150,000 for the first year, $175,000 for the second year, and $200,000 for the third year.

Under their contract, AFR required Brown to work Monday through Thursday each week.  In the beginning of Brown's engagement, AFR required him to spend

those workweeks at its headquarters in Pennsauken.    However, the evidence concerning the second half of 2013 is conflicted -- while Brown testified that during that period, he negotiated with AFR to work two weeks in Atlanta and two weeks in Pennsauken in order to offset travel costs, in other testimony he said he "was in a hotel room for 17 months every week" from October 2012 to February 2014.

Around this same time, Brown worked for two other companies: Park Mobile (April 2011 to April 2012) and Pango (2012 to 2014).  But Brown did not indicate where he worked for Park Mobile or how much time he spent on that work; as for Pango's work, Brown said he did it either in Atlanta, at AFR's offices in Pennsauken, or in a hotel room, but he did not provide the amount of time he spent on that work either.  Brown also testified that he did administrative work for Project Next, his concierge CFO business, in Atlanta and marketed his business "from anywhere," including Atlanta, since he typically marketed his business online, but again, he did not detail how much time he spent on these administrative and marketing tasks.

In Brown's 2012 tax returns, he deducted $10,065 in expenses based on his travel between Atlanta and Pennsauken; in his 2013 returns, he deducted $52,617 in expenses based on this travel.  The IRS disallowed the travel expense deductions for both years, resulting in income tax deficiencies of $3,669 for 2012 and $17,905 for 2013, and imposed a negligence penalty of $733 for 2012 and $3,581 for 2013.

3

The Browns then petitioned the Tax Court for review of the IRS's decision. They argued that the IRS erred in disallowing Brown's travel expense deductions because his travel from his tax home in Atlanta to AFR in Pennsauken was for business purposes and, therefore, deductible. The Tax Court disagreed. The court found that Brown's tax home became Pennsauken when he began working for AFR. In support of its finding, the court noted that Brown's engagement with AFR was indefinite and that, in light of the three-year term of the consulting agreement, Brown could not have expected the engagement to be temporary. The court refused to credit Brown's testimony, in the absence of any travel records and receipts, that he began to work alternate two-week periods in Pennsauken and Atlanta in mid-2013, and observed that Brown's testimony about his work for other companies was vague. As for Brown's claim that his tax home had to be Atlanta because he had no principal place of business from 1998 through 2013, the Tax Court found no authority for expanding the scope of inquiry beyond the years at issue. Thus, the court concluded that Brown's trips from his tax home in Pennsauken to Atlanta were not for business purposes and, accordingly, the associated expenses were not deductible. The court also affirmed the IRS's imposition of penalties for both years, since Brown relied only on the absence of deficiencies as a defense. This timely appeal followed.

We review the Tax Court's factual findings for clear error, and its legal conclusions de novo. Bone v. Comm'r, 324 F.3d 1289, 1293 (11th Cir. 2003).

4

Whether certain travel expenses are deductible under the IRC "is purely a question of fact in most instances." Comm'r v. Flowers, 326 U.S. 465, 470 (1946); see also Michel v. Comm'r, 629 F.2d 1071, 1073 (5th Cir. 1980).[1]  We also review for clear error whether a taxpayer acted with reasonable cause and in good faith when making a tax underpayment. Gustashaw v. Comm'r, 696 F.3d 1124, 1134 (11th Cir. 2012).

The Internal Revenue Code allows a deduction for travel expenses incurred "while away from home in the pursuit of a trade or business." 26 U.S.C. § 162(a)(2). A taxpayer only may deduct travel expenses directly attributable to the conduct of the taxpayer's business. 26 C.F.R. § 1.162-2(a).  According to the Supreme Court, a deduction under 26 U.S.C. § 162(a)(2) is only warranted if: (1) the expense is reasonable and necessary; (2) the expense is incurred while away from home; and (3) the expense is incurred in pursuit of business.  Flowers, 326 U.S. at 470.  The taxpayer bears the burden of proving the entitlement to a deduction.  United States v. Gen. Dynamics Corp., 481 U.S. 239, 245 (1987).

Under our case law,  "[a] taxpayer's home, for purposes of section 162(a)(2), means the vicinity of his principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment."  Michel, 629 F.2d at 1073; see also Jones v. Comm'r, 444

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

F.2d 508, 509-10 (5th Cir. 1971); Curtis v. Comm'r, 449 F.2d 225, 227 (5th Cir. 1971); Masline v. Comm'r, 30 T.C.M. (CCH) 850 (1971), aff'd, 462 F.2d 1328 (5th Cir. 1972).  A taxpayer is "away from home" if the taxpayer is required to travel away from his principal place of business for temporary work.  Michel, 629 F.2d at 1073; see Peurifoy v. Comm'r, 358 U.S. 59, 60-61 (1958); Groover v. Comm'r, 714 F.2d 1103, 1104-05 (11th Cir. 1983).  "A taxpayer who accepts permanent or indefinite employment in a location different from that of his residence . . . is considered to have moved his tax home to the new location, and is therefore no longer considered away from home."  Michel, 629 F.2d at 1073.

On the record before us, the Tax Court did not clearly err in finding that Pennsauken was Brown's principal place of business from October 2012 through December 2013.  For starters, Brown does not challenge on appeal the Tax Court's finding that his engagement with AFR was indefinite and not temporary; as the record reflects, Brown's consulting agreement with AFR had a term of three years, with the possibility of an extension.  Further, we cannot say that the Tax Court clearly erred in finding that Brown spent more time working in Pennsauken than Atlanta or anywhere else.  Brown admits that he "worked mostly from Pennsauken" at the beginning of his work for AFR, but says that he negotiated, in mid-2013, to begin working alternate two-week periods in Pennsauken and Atlanta.  However, Brown also testified that he "was in a hotel room for 17 months every week" upon

starting work with AFR (i.e., from October 2012 through February 2014). In addition, he gave an earlier statement to the IRS examining agent that, as of August 2014, he was still traveling between Pennsauken and Atlanta "every week." While Brown says that his use of the phrase "every week" was mere slip of the tongue, nothing in the record supports this interpretation. As the Tax Court observed, Brown could have, but did not, support his contrary testimony with travel records, which warranted an inference against him on this issue. See Mammoth Oil Co. v. United States, 275 U.S. 13, 52 (1927) (where a party fails to produce evidence that is uniquely in its possession, the natural conclusion is that the evidence would be unfavorable to the party). On this record, the Tax Court did not clearly err in finding that Brown worked four days every week in Pennsauken through December 2013. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985) (observing that a factfinder may reasonably refuse to credit internally inconsistent testimony).

As for Brown's claim that he did other work in other locations during this period, it is too vague. He said he did administrative work for Project Next, his concierge CFO business, in Atlanta; his online marketing work "anywhere"; and his work for Pango either in Atlanta, at AFR in Pennsauken, or in a hotel room. But he offered no evidence as to the amount of time he spent on these activities, making it unclear whether he spent more time on them than he did on his work for AFR (i.e., four days per week) in Pennsauken. Further, Brown did not claim a home office

7

expense deduction for the business use of his Atlanta home for either 2012 or 2013, reasoning that he did not do so because the benefit would have been insignificant, but this explanation only bolsters the notion that he did not primarily work from Atlanta. What's more, between October 2012 and December 2013, AFR was Brown's sole source of business income.[2] Accordingly, Brown's claim that he did non-AFR work from Atlanta during this period is unsupported by the record and irrelevant, since we are unable to compare the amount of time he spent in each place.

The Tax Court also correctly rejected the argument that, because Brown had worked for various clients in various locations since 1998, he should be deemed to have no regular place of business and therefore his permanent residence in Atlanta should be considered his tax home. The Tax Court has recognized that, if a taxpayer has no regular principal place of business during the period in question, the taxpayer's permanent residence is deemed to be his tax home. See Zbylut v. Comm'r, 95 T.C.M. (CCH) 1172 (2008) (merchant sailor's permanent residence in the United States was tax home because he spent tax year aboard cargo ship docking at various ports); Johnson v. Comm'r, 115 T.C. 210, 212-14, 223 (2000) (same). As

---

[2] Brown reported income from AFR for $37,500 in 2012 and $184,759 in 2013. While he reported income from Park Mobile for 2012, his engagement with Park Mobile ended in April 2012, before he began working for AFR (and began incurring travel expenses between Pennsauken and Atlanta) in October 2012. He reported no income from Pango during this time and did not even submit into evidence the Form 1099 from Pango he claimed he had received. We are unpersuaded by Brown's suggestion that he, a CPA of about 30 years, simply neglected to report his income from Pango.

for whether, as Brown argues, the court should consider a taxpayer's travels outside the period under examination, the Tax Court solely has done so to evaluate the taxpayer's reasonable expectation concerning the duration of the employment at issue for the period under examination, or for background purposes. See, e.g., Michel, 629 F.2d at 1074-75. However, Brown offers no authority, nor any persuasive reason for taking into account his travels and employment in years other than the years at issue in order to determine whether he had a principal place of business for the year in question. In short, the Tax Court did not clearly err in finding that Pennsauken was Brown's principal place of business between October 2012 and December 2013.

Nor, moreover, did the Tax Court clearly err in finding that there was no business purpose to Brown's trips from his tax home in Pennsauken to his residence in Atlanta. While the IRC generally prohibits deductions for "personal, living, or family expenses," 26 U.S.C. § 262(a), there is an exception for the deduction of otherwise nondeductible personal living expenses if they are incurred "while away from home in the pursuit of a trade or business." Id. § 162(a)(2). Notably, "[t]he exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." Flowers, 326 U.S. at 474. A taxpayer may not deduct travel expenses necessitated by his decision to maintain a residence distant from his employment, where that decision is irrelevant to his employer or

9

business. See id. at 473-74; Groover, 714 F.2d at 1104. Here, Brown could be "anywhere" when doing his administrative work for Project Next, and he gave no reason for having to be in Atlanta to do his work for Pango or for any other aspect of his business. Rather, Brown's trips to Atlanta and decision to maintain a home in Atlanta appear to have been motivated by a personal desire to spend time with his family that did not benefit either AFR or his other business, especially since his contract with AFR required him to be in Pennsauken four days per week. Therefore, the Tax Court did not clearly err in finding that Brown's travel expenses were not incurred "in the pursuit of a trade or business" and were nondeductible personal expenses. See 26 U.S.C. §§ 162(a)(2), 262(a); Flowers, 326 U.S. at 470, 473-74.

Finally, the Tax Court did not err in upholding the IRS's twenty-percent penalties against the Browns under 26 U.S.C. § 6662. This provision defines "negligence" as any failure to make a reasonable attempt to comply with the IRC and to exercise ordinary and reasonable care in the preparation of a tax return. 26 U.S.C. § 6662(c); 26 C.F.R. § 1.6662-3(b)(1). As we've noted, Brown's background was as a CPA and finance professional, and his sole defense against the penalties, in the Tax Court and on appeal, is that he does not owe the tax deficiencies. He has waived any other argument about the penalties, including the existence of reasonable cause. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir.

2004).  Thus, because the Browns are liable for the deficiencies, they are liable for the penalties as well.

**AFFIRMED**.