MARK R. AND JUDITH R. BARTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barton v. Commissioner
Docket No. 7425-90
United States Tax Court
T.C. Memo 1992-25; 1992 Tax Ct. Memo LEXIS 38; 63 T.C.M. (CCH) 1797; T.C.M. (RIA) 92025; January 13, 1992, Filed *38 Decision will be entered for respondent except as to the additions to tax under section 6653. Mark R. and Judith R. Barton, pro se.
Sheri Wilcox and David W. Johnson, for the respondent. GOLDBERG, Special Trial Judge. GOLDBERG
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986. [1]
Respondent determined deficiencies in petitioners' Federal income tax for the years 1984, 1985, and 1986, as well as additions to tax as follows: Additions to Tax Under Sections
Year
Deficiency
6653
6653
6653
6653
6661
(a)(1)
(a)(2)
(a)(1)(A)
(a)(1)(B)
1984
$ 2,650
$ 133
*
--
--
--
1985
5,621
281
*
--
--
$ 1,405
1986
5,288
--
--
$ 264
*
1,322
*39 After a concession by petitioners, the issues for our decision are: (1) Whether petitioners are required to report as income the per diem allowance which petitioner husband received in the years 1984, 1985, and 1986; (2) whether the additions to tax for negligence and intentional disregard of rules or regulations are applicable for the years in question; and (3) whether the addition to tax for substantial understatement of income tax is applicable for taxable years 1985 and 1986. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Bay City, Texas, when they filed this petition. Mark Barton (petitioner) worked for Allied Nuclear, Inc., at the Duane Arnold Energy Center in Palo, Iowa, as a radioactive waste operator and senior health physics technician. He was employed continuously from May 30, 1984, through February 22, 1988. During the years under consideration, he received from his employer the following amounts as per diem allowances: in 1984, employer the following amounts as per diem allowances: in 1984, $ 10,746; in 1985, $ 18,564, and in 1986, $ 18,546. These *40 amounts were not included on any Forms W-2 or 1099 which petitioner received from his employer, and he did not report them as income. Petitioner contends that these amounts were expended for business expenses away from his home in Salt Lake City, Utah. Petitioner was employed as a pipefitter for Union Pacific Railroad in Salt Lake City in 1980. Due to severe financial demands caused by his family's medical problems, he became a radioactive waste operator and health physics technician, as this was a more lucrative career. From 1981 to 1984, he worked in San Onofre, California, for Power Systems Energy Services, Inc., living during those years with his family in southern California. Then petitioner accepted work with Allied Nuclear in Cedar Rapids, Iowa. Petitioner and his family lived in a rented house in Cedar Rapids, Iowa, during the years in question, buying a house there in 1987. Petitioners maintained ties with their families in Salt Lake City, but did not return there frequently because of the great distances involved. From Cedar Rapids, petitioner and his family returned twice to Salt Lake City. Petitioner maintained a bank account and voter registration in Salt Lake *41 City. During the years in question he used the home of his wife's parents in Salt Lake City as a business address, for the purpose of seeking employment. Petitioner paid his father-in-law $ 50 per month for storing furniture, providing telephone service, receiving mail, and making his home available for lodging when petitioner required it. In Cedar Rapids, petitioner was employed by Allied Nuclear, which contracted on a yearly basis to supply employees for Iowa Electric at the Duane Arnold Energy Center. Petitioner did not know whether Allied Nuclear's contract would be renewed. Consequently, his job status was precarious: he was subject to possible reductions in workforce and to the possibility that his employer's contract would not be renewed. He was warned of the possible impending elimination of his position, but, in fact, he worked continuously for almost 4 years, finally losing his job because of a dispute with his employer, not because work was unavailable. Petitioner was never given any indication of the likely duration of his employment. He was classified as a temporary employee for the entire 3 years and 9 months that he was employed in Cedar Rapids. In his employment *42 contract, he agreed to provide "temporary services". A letter addressed by Allied Nuclear to "All Employees" stresses the uncertainty of the employment and mentions several variable factors which make the duration of employment "unpredictable". A Job Assignment form describes petitioner's position as "Temporary", but adds that Estimated Job Duration is "Long Term". Petitioners did not attempt to prepare their own tax returns. Having had problems in the past with a return preparer who took unjustified deductions, they had a policy of hiring only certified public accountants to do their returns. They disclosed to their accountant that petitioner received a per diem allowance. Respondent determined that the per diem allowance received by petitioner constitutes taxable income. Respondent's position is that petitioner is not entitled to offset the per diem allowance with his expenses in Cedar Rapids because Cedar Rapids, not Salt Lake City, was petitioners' tax home and, in the alternative, that even if Salt Lake City was petitioners' tax home, no offsetting deduction is allowed because petitioner's employment was not "temporary", but of "indefinite" duration. Petitioner takes *43 the position that his expenses in Cedar Rapids, Iowa, were business expenses away from home in pursuit of a trade or business and deductible under section 162(a)(2). The per diem allowance, petitioner contends, is offset by his expenses away from home, with the net effect that the per diem does not constitute taxable income. In answering the question of whether a taxpayer is entitled to exclude a per diem allowance from income, this Court analyzes whether the petitioner's employment is "away from home" within the meaning of section 162(a)(2). Cockrell v. Commissioner, 321 F.2d 504 (8th Cir. 1963), affg. 38 T.C. 470 (1962). Section 162(a)(2) allows a taxpayer to deduct traveling expenses, including the cost of meals and lodging, if such expenses are (1) ordinary and necessary; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946); Foote v. Commissioner, 67 T.C. 1, 3 (1976). The purpose of the deduction is to allow a taxpayer relief for the additional or duplicate expenses incurred while away from home on business. Commissioner v. Flowers, supra; *44 Brandl v. Commissioner, 513 F.2d 697, 699 (6th Cir. 1975), affg. T.C. Memo. 1974-160; Bochner v. Commissioner, 67 T.C. 824, 827 (1977). The fundamental question is whether petitioner was in traveling status or whether he moved his home to the place where he worked. Cockrell v. Commissioner, 321 F.2d at 507. This presents a factual question for which petitioners have the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The word "home" as used in section 162(a)(2) is a term of art. It does not mean the taxpayer's domicile, but rather his "tax home," i.e., his principal place of business, employment, or station of duty. Jones v. Commissioner, 54 T.C. 734 (1970), affd. 444 F.2d 508 (5th Cir. 1971). Determining a taxpayer's "home" for purposes of section 162(a)(2) requires an assessment of the taxpayer's contacts with his alleged tax home. Some of the relevant contacts include (1) the time the taxpayer has spent at his tax home; (2) his business connections in the vicinity of his tax home; (3) his prospects for future employment *45 in the area; and (4) whether the taxpayer incurred substantial continuing expenses at the tax home. See Brandl v. Commissioner, 513 F.2d at 699; Bochner v. Commissioner, 67 T.C. at 828. Generally, a taxpayer is entitled to deduct his travel expenses only when travel is required by the exigencies of his employer's business. Commissioner v. Flowers, supra at 472-473. The Tax Court recognizes a narrow exception to this rule when the taxpayer's employment is "temporary" as contrasted with "indefinite" or "indeterminate". Thus, a taxpayer continues to have his "home" at his regular place of employment if he accepts "temporary employment of short duration" at another location; but if the assignment is of "substantial" or "indefinite" duration, the second location becomes his "home" within the meaning of section 162(a)(2). Commissioner v. Peurifoy, 254 F.2d 483, 486-487 (4th Cir. 1957), affd. 358 U.S. 59 (1959); Jones v. Commission, supra.When his employment is temporary, a taxpayer may deduct his expenses away from home even though such expenses are required *46 not by the exigencies of the employer's business, but by the exigencies of the employee's business as an employee. Peurifoy v. Commissioner, supra.
On the basis of the entire record, we find that Cedar Rapids, not Salt Lake City, was petitioners' tax home. A review of petitioners' contacts with the claimed tax home reveals that petitioners did not spend any substantial amount of time in Salt Lake City and have not done so since 1980. Doing so was impossible for them because of the distances between petitioner's places of employment and Salt Lake City. After leaving Salt Lake City, petitioners lived for 3 years in California before moving to Cedar Rapids. They longed to return to Salt Lake City, but their ties to that city were purely personal. Except for use of a mailing address, petitioner had no business contacts with Salt Lake City. He did not work there after 1980 and testified that, however much he wanted to return, the citizens of Salt Lake City had rejected nuclear power plants, a policy which made employment unlikely for him at the salary which he needed to support his family. Finally, petitioner and his family lived together during the years in question close *47 to his jobsite, so he did not incur the duplicate expenses which are typical of temporary employment. In short, petitioners were not able to maintain any of the types of business relations with Salt Lake City which would entitle them to consider it their tax home. It is clear that petitioner had no idea how long his employment in Cedar Rapids might last. The only assurance he received from Allied Nuclear was that his job might be terminated at any time, due to the many economic and contractual variables affecting Allied's relationship with Iowa Electric. Such uncertainty as to duration does not operate, however, to transform a stay of 3 years and 9 months into a "temporary" job. For employment to be "temporary," it must be "temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops." Commissioner v. Peurifoy, supra at 486. In view of all the facts and circumstances, it would have been reasonable to assume at the inception of the employment that it would continue for a substantial, indeterminate period of time, and the substantial actual duration is persuasive that the employment was "indeterminate in fact as *48 it developed." McCallister v. Commissioner, 70 T.C. 505, 510 (1978); Norwood v. Commissioner, 66 T.C. 467 (1976). Compare Filler v. Commissioner, 321 F.2d 900 (8th Cir. 1963), T.C. Memo. 1962-254 (per diem allowance received for 3-year period includable in income). Therefore, we hold that the per diem allowance is fully taxable to petitioners, as it is not offset by deductible travel expenses away from home under the provisions of section 162(a)(2). To hold otherwise "would place petitioners' home where * * * [their] heart lies and render section 162(a)(2) a vehicle by which to deduct the full spectrum of one's personal and living expenses." Bochner v. Commissioner, supra at 828-829. Respondent also determined that petitioners are liable for additions to tax pursuant to section 6653(a) for negligence or intentional disregard of rules or regulations. Negligence under section 6653(a) means lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners *49 have the burden of proving that respondent's determination of the additions to tax is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Taxpayers have a duty to file accurate tax returns and generally cannot avoid this duty by placing responsibility with an agent. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). However, taxpayers may insulate themselves from the negligence addition by a good-faith reliance on professional advice. Jackson v. Commissioner, 86 T.C. 492, 539 (1986), affd, 864 F.2d 1521 (10th Cir. 1989); Pritchett v. Commissioner, supra; Woodbury v. Commissioner, 49 T.C. 180, 200 (1967). To successfully insulate themselves, taxpayers must provide their agents with all relevant information necessary to prepare the return. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). In this case, petitioners had a clearly articulated family policy of hiring only certified public accountants to prepare their tax returns. Petitioners stated convincingly that they provided their accountants with complete information *50 concerning the issue of the per diem allowance, and there is no indication that they were acting in bad faith. A taxpayer "misguided and unsophisticated in the realm of tax law", who acts in good faith, should not be liable for additions to tax under section 6653(a). Hansen v. Commissioner, 820 F.2d 1464, 1469 (9th Cir. 1987). Therefore, petitioners are not liable for the negligence additions to tax under section 6653(a). Respondent finally determined that petitioners are liable for an addition to tax for tax years 1985 and 1986 pursuant to section 6661, which provides for an addition to tax if there is a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). According to the notice of deficiency, the tax required to be shown on petitioners' 1985 return was $ 10,008. Petitioners' 1985 return, as amended in 1986 by Form 1040X, showed a tax due of *51 $ 4,387, giving rise to an understatement of $ 5,621. This understatement is substantial for purposes of section 6661 because it exceeds the greater of $ 5,000 or $ 1,001 (10 percent of the tax required to be shown on the return). According to the notice of deficiency for 1986, the tax required to be shown was $ 8,483. Petitioners' return showed a tax due of $ 3,195, and thus an understatement of $ 5,288. This understatement is substantial, as it exceeds the greater of $ 5,000 or $ 848 (10 percent of the tax required to be shown on the return). Petitioners have the burden of proving that the section 6661 addition to tax, as determined by respondent, is erroneous. Rule 142(a). Petitioners have not met their burden of proof. Therefore, respondent is sustained on the issue of the addition to tax for substantial understatement. Decision will be entered for respondent except as to the additions to tax under section 6653. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules or regulations.↩